# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

ARKONA, LLC, et al,
    Plaintiffs

                             Case No.: 19-cv-12372
                            Hon. Thomas L. Ludington

    v.

                                     **RESPONSE**

COUNTY OF CHEBOYGAN, et al,
    Defendants

_____/

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Counsel for Plaintiffs
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

MATTHEW E. GRONDA (P73693)
Counsel for Plaintiffs
PO Box 70
St. Charles, MI 48655
(989) 249-0350
matthewgronda@gmail.com

ALLAN C. VANDER LAAN (P33893)
BRADLEY C. YANALUNAS (P80528)
CUMMINGS, MCCLOREY, DAVIS &
ACHO
Attorneys for Defendants
2851 Charlevoix Dr., SE, Ste. 327
Grand Rapids, MI 49546
(616) 975-7470
avanderlaan@cmda-law.com
byanalunas@cmda-law.com

---

# RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## ISSUE(S) PRESENTED

Should Defendants' motion to dismiss be granted?

Answer:
No

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**MOST CONTROLLING AUTHORITY**

*U.S. v. Lawton*,
110 U.S. 146 (1884)

*Austin v. U.S.*,
509 U.S. 602 (1993)

*U.S. v. Bajakajian*,
524 U.S. 321 (1998)

*Luessenhop v. Clinton Co.*,
466 F.3d 259 (2nd Cir. 2006)

*Coleman through Bunn v. Dist. of Columbia*,
70 F. Supp. 3d 58 (D.D.C. 2014)

*Vives v. City of New York,*
524 F.3d 346 (2nd Cir. 2008)

*Cooper v. Dillon*,
403 F.3d 1208 (11th Cir. 2005)

*Cahoo v. SAS Analytics, Inc.*,
912 F.3d 887 (6th Cir. 2019)

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## BRIEF IN OPPOSITION

In 1884, the federal government had a real property tax. When a landowner did not pay, the US Government seized his entire property and sold it for more than tax due and outstanding. The US Government, in trying to secure a way to keep the surplus equity, argued that it could keep the value of the equity in excess of the tax delinquency by the Court reframing the tax statute in its favor. The US Supreme Court flatly rejected that argument and rejected that particular statutory interpretation because—

> To withhold the surplus from the owner would be to violate the Fifth Amendment to the Constitution and to deprive him of his property without due process of law, or to take his property for public use without just compensation. If he affirms the propriety of selling or taking more than enough of his land to pay the tax and penalty and interest and costs, and applies for the surplus money, he must receive at least that.

*U.S. v. Lawton*, 110 U.S. 146, 150 (1884). Defendants are trying to have history repeat itself with a different result. However, claiming to be able to keep the excess/surplus equity—a property right—after all taxes, penalties and late fees are paid is just as unconstitutional today as it was following the Civil War. Defendants now suggest it is now become constitutional due to statutory destruction of common law property rights; it isn't.

## FACTS

Plaintiffs incorporate by reference their entire First Amended Complaint for all the uncontested facts. A summary follows. Plaintiff Arkona,

LLC purchased (and became the owner of) four large parcels, consisting of more than 400 acres, of real property in Cheboygan County (the "Cheboygan Ore Property") in or around December 2012 for $362,000. **First Am. Compl., ¶¶13-14.**[1] The Cheboygan Ore Property had a fair market value of at least $505,000, but had an unpaid tax-plus-penalties delinquency of $39,750. **Id., ¶¶15, 19.** Defendant Linda A. Cronan, as the then duly-serving treasurer, seized full ownership of the Cheboygan Ore Property on behalf of the Defendant Cheboygan County (and/or on behalf of Defendant Linda A. Cronan and/or Buffy Jo Weldon in her official capacity as treasurer of Cheboygan County) and later sold the Cheboygan Ore Property at tax auction at the highly reduced, non-fair market value price of $307,000. **Id., ¶16.** From these proceeds, Defendant Linda A. Cronan resolved (i.e. paid) the $39,750 delinquency in full and had remaining $267,250 as the difference between the tax auction price and the total tax delinquency owed. **Id., ¶¶19-**

---

[1] A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The complaint is construed in the light most favorable to the plaintiff, accepted as true, and all reasonable inferences viewed in favor of the plaintiff. *Id.* The complaint only need be merely plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All allegations as deemed true even if "doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Challenges to subject-matter jurisdiction under Rule12(b)(1) come in two varieties: a facial attack or a factual attack. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). A facial attack on the subject-matter jurisdiction—like the one Defendants make here—solely questions merely the sufficiency of the pleading. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A district court takes the allegations in the complaint as true, just as in a Rule 12(b)(6) motion. *Id.*

**20.** Neither the County nor the treasurer had any legal basis to retain/destroy that remaining equity. She then seized that partially-monetized equity for and on behalf of Defendant Cheboygan County and/or Defendants Linda A. Cronan in her official capacity. *Id.* When put together, Plaintiff Arkona, LLC's equity of $465,250 (i.e. the value of $505,000 minus the tax delinquency of $39,750) was taken and/or destroyed by the County's voluntarily-undertaken process and not returned by Defendants Linda A. Cronan (or her successor, Buffy Jo Weldon) and/or Cheboygan County. *Id.*, **¶¶22-26.**

Plaintiff Dianne Kosbab became the owner of a parcel of vacant real property in Monroe County near Lake Erie (the "Lakeshore Drive Property") in or around July 2011. *Id.*, **¶27.** The total tax-plus-penalty delinquency was $2,500. *Id.*, **¶28.** Defendant Kay Sisung, as the duly-serving treasurer, seized ownership of the Lakeshore Drive Property on behalf of the Defendant Monroe County (and/or on behalf of Defendant Kay Sisung in her official capacity as treasurer of Monroe County) and sold the Lakeshore Drive Property at tax auction for $28,250. *Id.*, **¶29.** Defendant Kay Sisung, as the county treasurer, resolved (i.e. paid) the $2,500 debt and then destroyed any remaining excess equity just after foreclosing on the Lakeshore Drive Property by selling the same for $28,250, and then kept (and did not return) $25,750 as the difference between the value of said property and the total

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

3

tax delinquency owed for the benefit of Monroe County. *Id.,* **¶¶31-32.** No voluntary refund of the excess or surplus equity was or will be provided by Defendants Kay Sisung and/or Monroe County. *Id.,* **¶¶34-36.**

Under Michigan law, these Defendants voluntarily decided to be the "Foreclosing Governmental Unit" (the FGU) as was their option pursuant M.C.L. § 211.78(6).[2] Plaintiffs have expressly pled that that the actions complained for the two Section 1983 claims (Counts I and V) are a voluntary policy, custom, and/or practice sufficient to impose damages[3] and other relief pursuant to *Monell* for each county. *Id.,* **¶¶54-56, 94-95.**

Defendants moved to dismiss the First Amended Complaint in full pursuant to Rule 12(b)(1) and Rule 12(b)(6) before filing an answer. This opposition now follows.

## ARGUMENT

### I.   The Tax Injunction Act

For its first challenge, Defendants claim the *Tax Injunction Act*, 28 U.S.C. §1341, applies to deprive this Court of jurisdiction. The TIA reads—

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

---

[2] A timeline of activities the FGU undertakes is available at: https://www.michigan.gov/documents/taxes/ForfeitureForeclosureTimelinesChart_317028_7.pdf

[3] Plaintiffs are asserting two general damages theory. The main theory is that the damages is the fair market value minus the tax delinquency plus *Knick* interest. The alternate theory is the auction price minus the tax delinquency plus *Knick* interest. If the Court finds that the remedy under Const. 1963, art. X, § 2 applies, an additional state constitutional bump will need to calculated in those foreclosed upon "primary residences."

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The first question is whether the legal challenge in the instant case even involves the "levy, collection, or assessment of a state tax." The answer is clearly no due to its narrow reading.[4] *Luessenhop v. Clinton Co.*, 466 F.3d 259, 265-268 (2nd Cir. 2006);[5] *Coleman through Bunn v. Dist. of Columbia*, 70 F.Supp.3d 58, 65-68 (D.D.C. 2014). A careful reading the First Amended Complaint reveals that Plaintiffs are not seeking any injunction or declaration regarding the assessment, levy or collection of any tax under State law. Moreover, the "Tax *Injunction* Act" only applies to sought injunctions or their declaratory equivalents. See *Nat'l Private Truck Counsel, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 586-587 (1995). Damage claims have never been barred by the TIA. By the TIA's name, plain text, and the lack of the seeking of such relief covered by the statute, the TIA simply does not apply to this case as a damages case. Instead, this Court has jurisdiction for Section 1983 civil rights claims premised on violations of the US Constitution. 28 U.S.C. §

---

[4] In fact, under the *General Property Tax Act*, the "tax" expressly does not include the surplus or excess equity. M.C.L. § 211.78a(1) (definition does not include surplus / excess equity).

[5] Plaintiffs urge the Court to note the pithy observation of the Second Circuit— "summarily dismissing plaintiffs' causes of action because they pertain to state tax administration in the most general sense would be a patent misreading of the TIA." *Luessenhop, supra*, at 265.

1343(a)(3) and supplemental jurisdiction over state claims, 28 U.S.C. § 1367.

Moreover, only if a claim does seek to enjoin, suspend or restrain the assessment, levy or collection of any tax under State law does the second step exception—the lack of a "plain, speedy and efficient remedy"—then acts as a saving provision. When similar claims were brought in Michigan courts, the Michigan courts rejected to provide any sort of "plain, speedy and efficient _remedy_." See **Exhibit A**. A remedy means "legal or equitable relief." BLACK'S LAW DICTIONARY, 10th ed., p. 1485. While Michigan recognizes inverse condemnation as a general claim, it currently does not "plainly, speedily or efficiently" grant any "_relief_" for these _types_ of claims. _Rafaeli, LLC v. Oakland Cty._, No. 330696, 2017 WL 4803570 (Mich. Ct. App. Oct. 24, 2017). As such, the TIA is not a bar to these Section 1983 claims.

Plaintiffs are not seeking a tax refund, to challenge the tax debt owed, or oppose the Defendants method seeking payment of total delinquency. It only seeks that above-and-beyond what was owed, i.e. the excess/surplus equity. This Court should follow _Coleman_ and _Luessenhop._

## II.   Comity

Next, Defendants claim comity—a non-jurisdictional doctrine—bars jurisdiction in this case. The doctrine of tax comity has its origins from _Fair_

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*Assessment in Real Estate Ass'n., Inc. v. McNary*, 454 U.S. 100 (1981), which explained that when the "adequacy of available Missouri remedies [was] not at issue…, taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts." Two points missed by Defendants. First, *Hibbs* explained that comity was invokable "only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection." *Hibbs v. Winn*, 542 U.S. 88, 107 fn.9 (2004), or in other words, challenging the validity of state tax systems.

Second, when state court "remedies" are not "plain, adequate, and complete," comity no longer bars. *Fair Assessment, supra*, at 108. This case is not seeking to challenge the validity of state taxes or to order to arrest or countermand state tax collection. The instant case is not within this class of comity. But even if it was, Plaintiffs assert that Michigan remedies, unlike Missouri's remedies, fail to be plain, adequate, and complete to obtaining and meaningful relief from Defendants' unconstitutional actions. *Rafaeli, LLC v. Oakland Cty.*, 2017 WL 4803570 (Mich. Ct. App. Oct. 24, 2017).

In short, this lawsuit is a legal challenge is what happens *after* the tax administration process is done and over with, i.e. Defendants keeping and retaining the equity—after full payment of all tax-plus-penalties

delinquencieswhich the government no longer has a lawful debt to collect upon. *Coleman, supra*, at 69.

Moreover, the US Supreme Court's recently-issued *Knick* decision removes any continued vitality of the prior hands-off approach solely when it comes to takings claims.  Because a property owner acquires a right to compensation "immediately" upon an uncompensated taking, the property owner may then immediately (i.e. "at that time") bring a claim under § 1983 for the constitutional taking deprivation. *Knick, supra*, at 2172. *Knick* does not condition the action authorized for takings claims on the comity doctrine from *Fair Assessment*. As such, the takings claims are clearly not subject to the run-of-the-mine comity restrictions of *Fair Assessment*, especially one not implicating an attempt to "arrest or countermand state tax collection."

## III.    Res judicata

Next, Defendants argue that these claims are barred by res judicata premised on the *in-rem* foreclosure judgment entered by the state court when vesting title to the county treasurer. Res judicata only applies when three elements are satisfied: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Sewell v. Clean Cut Mgt., Inc.*, 463 Mich. 569, 575 (2001). Because the prior tax

foreclosure case was an *in-rem* process, the state court never obtained personal jurisdiction over these plaintiffs and thusly this action and the prior action lacks the same parties and privities. Additionally, the first action did not render any merits decision on the constitutional claims raised here and Michigan uniquely does not have mandatory counterclaims obligations. Michigan law "allows a party… to maintain its counterclaim *in a separate independent action.*" *Salem Indus., Inc. v. Mooney Process Equip Co.*, 175 Mich. App. 213, 216 (1988); see also *Holzemer v. Urbanski*, 86 Ohio.St.3d 129, 136 (1999). As such, the claims of takings and excessive fines are permitted, under Michigan law, to be brought in a separate independent action via *Salem* and MCR 2.203(E) even if they could have been, but were not, brought in the first case. Extending these principles to this Court via the *Full Faith and Credit Act*, the Court must simply treat these challenges as independent counterclaims made in an independent action not previously barred by res judicata.

Additionally, there was no opportunity to bring constitutional challenges within the *in-rem* proceeding because the GPTA allows to "contest the validity or correctness of the forfeited unpaid delinquent taxes, interest, penalties, and fees" for only one of six reasons. M.C.L. § 211.78k(2). None are for the resulting _subsequently-occurring_ constitutional takings and

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

excessive fines violations. Even more directly, Plaintiffs were not contesting the "validity or correctness of the forfeited unpaid delinquent taxes, interest, penalties, and fees" either. It is only what Defendants did *after* entry of the foreclosure judgment. As such, there is no res judicata bar.

## IV.    *Monell*

Next, Monroe and Cheboygan Counties and the treasurers in their official capacities try to frame a pre-answer *Monell* challenge as a type of affirmative defense. It is not such. The *Monell* standard an evidentiary element of a Section 1983 claim, not an affirmative defense. *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997). Here, Plaintiffs have expressly pled that that the actions complained for the two Section 1983 claims (Counts I and V) are a voluntary policy, custom, and/or practice sufficient to impose damages and other relief pursuant to *Monell*. **First Am. Compl., ¶¶54-56, 94-95.** At the Rule 12(b)(6) stage, that allegation is deemed true for purposes of this motion. *DirecTV, supra,* at 476.[6] It is more than enough to defeat

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

---

[6] The treasurer's in their official capacity bring up a good point. They claim that the counts against them in their official capacity are allegedly duplicative. This actually *might* be true. However, the leading case law from Michigan directs that when the County Treasurers act, they seemingly are solely acting on behalf of their own county office (created by the Michigan Constitution) rather than on behalf of their respective counties. See *Genesee County Bd of Commissioners v. Cherry*, Lapeer County Cir. Ct. Case No. 13-100456-CZ (May 6, 2014) (attached as **Exhibit B**). If Defendants collectively concede their acts, in their official capacities, are solely attributable to only Monroe and Cheboygan Counties respectively, then Plaintiffs happily stipulate to the dismissal of the official capacity claims as duplicative. However, if the treasurers in their official capacities adhere

Defendants' pre-answer motion and the Court need not go further.

However, Defendants also continue to argue against plausibly pled *Monell* liability by attributing their own voluntary county-level actions to be a state policy and not their own. A "policy" is a legal term of art to mean "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). The counties' choice to be the Foreclosing Governmental Unit (FGU) is and was strictly *voluntary*. M.C.L. § 211.78(6) ("The foreclosure of forfeited property by a county is voluntary…"). Defendants deliberately chose to voluntarily undertake that responsibility and the benefits therefrom. **First Am. Compl, Exhibits E, F, and K**.[7]  By voluntarily selecting to do so from the choice of declining to do so, each County formally adopted a county policy to undertake the foreclosure process and keep the excess equity for itself. See *Id.*; see also M.C.L. § 211.78(6). Under *Monell* jurisprudence, when a state statute does not require

---

to the holding of *Cherry*, they are actually only acting on behalf of the Office of the Treasurers of Monroe and Cheboygan Counties and not the counties themselves. In such circumstance, each Office of the Treasurer is a different legal party from the counties and the official capacity claims cannot be dismissed.

[7] Additional discovery for the meeting minutes will confirm the vote by each Board of Commissioners. However, these records are reattached hereto with the same exhibit numbering as from the First Amended Complaint.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

a municipality to act but the municipality voluntarily decides to do so nevertheless, the counties' use and benefit of state law is deemed the adopted policies and customs of the municipality itself. A local government and its officials are liable for constitutional violations when following and utilizing a *discretionary*-granting state statute. *Cooper v. Dillon*, 403 F.3d 1208, 1222-1223 (11th Cir. 2005); *Vives v. City of New York*, 524 F.3d 346, 351 (2nd Cir. 2008) (collecting cases); *DePiero v. City of Macedonia*, 180 F.3d 770, 787 (6th Cir. 1999) (same); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (same); see also *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1108 fn.4 (10th Cir. 2001) ("compliance, or the lack of compliance with a state statute is not the yardstick against which to assess a claimed federal constitutional violation").[8,9]  A local municipality is expressly liable even when acting under a state statute when it had a "meaningful" and "conscious" choice to adopt or reject the state option to participate. *Vives, supra*, at 354. Exercising the optional choice to be the FGU pursuant to M.C.L. § 211.78(6) (and thereby providing the ability for the

---

[8] An excellent discussion is provided by *Caminero v. Rand*, 88 F.Supp 1319, 1324-1325 (S.D.N.Y. 1995) and *Cmty. Health Care Ass'n of N.Y. v. DeParel*, 69 F.Supp.2d 463, 475-476 (S.D.N.Y. 1999).

[9] However, at least one federal district court found that this distinction to be irrelevant for § 1983 claims. *Davis v. City of Camden*, 657 F.Supp 396, 402-404 (D.N.J. 1987); see also Mark R. Brown, *The Failure of Fault Under § 1983: Municipal Liability for State Law Enforcement*, 84 Cornell L. Rev. 1503, 1517-1518 (1999). The Court should follow *Davis* as more correctly decided but is likely bound by *Garner* and *DePiero*.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

retention of excess or surplus proceeds) was a deliberate, meaningful, voluntary policy choice of both counties and became a county policy sufficient to meet *Monell*. **First Am. Compl., ¶¶54-56, 94-95.**

Defendants claim "[n]either the individual treasurers nor the Defendant counties can change Michigan's GPTA." **Brief, p. 18.** That is likely true; *however*, each could have simply declined to elect self-designating as the FGU (i.e. adopting a county policy) and avoid the unconstitutional acts complained of altogether.[10] They voluntarily decided to undertake the optional process and then caused unconstitutional wrongs.

## V.    Takings

Next, Defendants take issue with the way that Plaintiffs have pled their various takings claims. Count I seeks a takings remedy via 42 U.S.C. § 1983. Recently, the US Supreme Court reaffirmed that Plaintiffs could. "A property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it" and "the property owner may sue the government at that time in federal court for the 'deprivation' of a right 'secured by the Constitution.'" *Knick*, *supra*, at 2170 (2019). Count II seeks a takings remedy by a direct or "arising under" Fifth

---

[10] Defendants argue even without being the FGU, the county treasurers have certain other clerical duties under the GPTA. That might be true. However, Plaintiffs are not alleging that those particular actions (see Brief, p. 17) are unconstitutional in any way.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Amendment claim. This claim is premised on the notation that the Fifth Amendment, via the Fourteenth Amendment (see *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160 (1980)), is a "self-executing" constitutional provision requiring the payment of just compensation upon the takings undertaken by Defendants. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987). Plaintiffs would prefer to seek and obtain relief under Section 1983[11] but the unique nature of the Fifth Amendment provides a special "directly under" cause of action under *First English* should a Section 1983 claim no longer work in these circumstances. Counts III and IV are state law level takings claims separate from the federal ones. This is permissible. 28 U.S.C. § 1367.

A. **Takings occurred.**

Defendants next argue that no taking has occurred. Again, they are wrong. A taking occurs when a government (1) takes private property and (2) fails to compensate justly. *Prater v. City of Burnside, Ky*, 289 F.3d 417, 425 (6th Cir. 2002). "'Taking' is a term of art with respect to the constitutional right to just compensation and does not necessarily mean the actual and

---

[11] 42 U.S.C. § 1983 creates a constitutional-based cause of action against any "person" acting under "color of state law" (like a statute) who causes deprivation of a federal right (like just compensation vis-à-vis the Fifth Amendment) is liable to the victim citizen. 42 USC § 1983; see also *Kentucky v. Graham*, 473 U.S 159, 165-166 (1985).

14

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

total conversion of the property." *Hart v. City of Detroit*, 416 Mich. 488, 500 (1982). A taking happens when governmental action deprives the owner of property interests. *N.W. La. Fish & Games Pres. Comm'n v. U.S.*, 446 F.3d 1285, 1289 (Fed Cir. 2006); *Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall.) 166, 177-178 (1872). The scope of a taking should not be interpreted "in an unreasonable or narrow sense" and "should not be limited to the absolute conversion of property." *Thom v. State Highway Comm'ner*, 376 Mich. 608, 613 (1965).

The Fifth Amendment mandates "nor shall private property be taken for public use, without just compensation." U.S. Const. amend V; see also Const. 1963, art. X, § 2. The Takings Clause does not prohibit the taking of private property for public use altogether but rather requires compensation when a taking occurs. *Alta Eldorado Partnership v. County of Santa Fe*, 634 F.3d 1170, 1174 (10th Cir. 2011). The failure to pay "just compensation" is generally what violates the Fifth Amendment. *Knick, supra,* at 2168. "Just compensation" means the full monetary equivalent of the property taken. *Almota Farmers Elevator & Whse Co. v. U.S.*, 409 U.S 470, 473 (1973). The owner of taken property is to be put in the same position monetarily as it would have occupied if his property had not been taken. *Id.*, at 473-474.

Defendants misleadingly argue that a taking did not occur as to

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Plaintiffs' surplus or excess equity because the Cheboygan Ore and Lakeshore Drive Properties were not taken *when the tax auction occurred* because each treasurer fully owned the properties at the time of the tax sale. **Brief, p. 19**. This is *not* Plaintiffs' legal theory. Put plainly, the wrong did not occur *at* the time of the tax auction sale. Instead, the takings occurred *right after* each county treasurer obtained an *in-rem* foreclosure state court judgment in her favor for an asset worth numerous times more than the debt without undertaking condemnation for the equity above the tax owed *and concurrently* having no legal mechanism or having made its own processes to return the excess or surplus equity. See *Coleman, supra.* Like any unpaid creditor, the government is undisputedly entitled to seek and obtain payment for actual lawfully-owed debts. But in these circumstances, Defendants are not seizing and collecting only the total tax owed—they are later keeping vastly *more* than the amount of the debt by not returning the remaining equity—a recognized property interest. See e.g. *McCallister v. McCallister*, 300 N.W.2d 629, 633 (Mich. Ct. App. 1980) (treating "home equity" as "property" in divorce proceeding); *Verla v. Reverse Mortgage Solutions*, No. 320211, 2015 Mich App LEXIS 935 (Mich. Ct. App. May 7, 2015) (noting home equity is property that can be used as collateral for a loan); *Gappy v. Gappy*, No. 342861, 2019 WL 4553445 (Mich. App. Ct. Sept. 19, 2019) (court

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

dividing home equity as a marital asset). There is no dispute that government can and should be paid the total tax-plus-penalties delinquency, what is their right to the remaining surplus or excess equity (i.e. $465,250 as to the Cheboygan Ore Property and $25,750 as to Lakeshore Drive Property) at the time of foreclosure? It is not the government's absent condemnation and just compensation. E.g. *Coleman*, *supra*, at 80; *Webb's Fabulous Pharmacies, supra*, at 164.[12]

Consistent with *Lawton*, that surplus/excess equity—a property right of the citizen—is not the government's, yet Defendants "take" or keep it anyways shortly after the *in-rem* process is accomplished.[13] A property owner acquires a right to compensation immediately upon an uncompensated taking because the taking itself violates the Fifth Amendment. *Knick*, *supra*, at 2165. And when that happens, "the property owner may, therefore, bring a claim under § 1983 for the deprivation of a constitutional right at that time." *Id.* This lawsuit expressly alleges

---

[12] Defendants also suggest there is no entitlement to the excess/surplus equity after the auction because the GPTA provides no means of securing it after foreclosure. That logic does not defeat a takings claim, but merely establishes the date when the takings claim fully *ripens* for adjudication.

[13] "A taking is a discrete event…" the "time being the moment when the relevant property interest is alienated from its owner. Precise specification of the moment a taking occurred and of the nature of the property interest taken is necessary in order to determine an appropriately compensatory remedy." *Palazzolo v. Rhode Island*, 533 U.S. 606, 639 (2001) (STEVENS, J., concurring in part, dissenting in part).

Defendants failed the constitutional duty to pay just compensation for that equity taken *above or in excess* the taxes owed with no legal mechanism to return the excess/surplus equity. Thusly, a taking occurred long before the tax sale. The similar non-return of excess equity process like Michigan's has seen their property tax schemes be deemed unconstitutional. *Thomas Tool Services, Inc. v. Town of Croydon*, 761 A.2d 439, 441 (N.H. 2000); *Bogie v. Town of Barnet*, 270 A.2d 898, 903 (Vt. 1970); see also *Coleman*, *supra*, at 65.

Defendants also suggest that GPTA conveyed the fee of the property to them and all of Plaintiffs' property value to beyond the total tax debt in the Cheboygan Ore and Lakeshore Drive Properties simply evaporated. That notion too has been rejected. Merely because the GPTA does not expressly protect Plaintiffs' common law property rights to excess/surplus equity does not mean property vanishes into the thin air. *Webb's*, *supra*, at 164. The Takings Clause bars Defendants from trying to avoid payment of just compensation by having state law simply changing the private character of property to public by mere legislative fiat. *Id.*; *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 439 (1982). "No matter how weighty the public purpose behind" the law may be, the constitution "require[s] compensation." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003,

1015 (1992).

### B.    Inverse condemnation

Via this Court's supplemental jurisdiction, Plaintiffs also asserted inverse condemnation as a state law claim.[14] Defendants' arguments to dismiss for failing to state this claim are difficult to unpack. Perhaps some legal background first. A landowner is entitled to bring an action in inverse condemnation as a result of "the self-executing character of the constitutional provision with respect to compensation." *First English, supra*, at 315. An inverse condemnation suit has "legal and practical differences" from a direct condemnation proceeding. *U.S. v. Clarke*, 445 U.S. 253, 255 (1980). A "condemnation" proceeding "is commonly understood to be an action brought by a condemning authority in the exercise of its power of eminent domain." *Id.* On the other hand, "the phrase 'inverse condemnation' appears to be one that was coined simply as a shorthand description of… a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Id.* Michigan has a standard direct condemnation

---

[14] Outside of generally asserting that a taking has not occurred, Defendants do not otherwise challenge the Article X, Section 2 Michigan state constitutional claim.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

process, the *Uniform Condemnation Procedures Act*. However, under Michigan inverse condemnation law, the UCPA "has no application to inverse condemnation actions initiated by aggrieved property owners… because the UCPA *only governs actions initiated by an agency*…" *Lim v. Dep't of Transp.*, 167 Mich. App. 751, 755 (1988) (emphasis added). That is not occurring here. The UCPA has no bearing on the inverse condemnation claim.

Defendants correctly recount that the government "is liable to pay compensation for a taking" and Plaintiffs have only made the government-defendants such to this inverse condemnation claim. No dispute there. However, they continue by asserting that "no taking has occurred." But it "plausibly" has—the relevant standard at this current procedural stage. Plaintiffs claim a property interest in the value of the equity of their real and improved property in excess of the total tax delinquency that Defendants are either destroying by monetizing their equity and keeping the excess/surplus. Equity is property. *Crane v. Commissioner*, 331 U.S. 1, 7 (1947) ("'equity' is defined as 'the value of a property above the total of the liens.'"); see also *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 392 (6th Cir. 1986). Equity is a recognized common law property right. *McCallister, supra*; *Verla, supra*;

20

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

and *Gappy, supra*.[15] Common law property rights are protected by the Takings Clause. E.g. *Bott v. Mich. Dep't of Nat. Res*., 415 Mich. 45, 83-87 (1982). Retaining excess and surplus equity is a taking. *Lawton, supra*, at 150. The Michigan Supreme Court is set to decide whether it is a taking as well. See *Rafaeli, LLC v. Oakland Co.*, 919 N.W.2d 401 (Mich. 2018).[16] This Court will be bound by that determination for the inverse condemnation state law claim and the Article X, Section 2 Michigan constitution claim. *Johnson v. U.S*., 130 S. Ct. 1265, 1269 (2010). Prudence might suggest to simply wait to receive the forthcoming decision rather than prematurely guess at what the Michigan Supreme Court might do. See *Saab Auto. AB v. Gen. Motors Co*., 770 F.3d 436, 440 (6th Cir. 2014). Either way, a plausible set of takings claims have been pled to defeat a Rule 12(b)(6) challenge.

## VI.   Excessive fines

As an alternative to the takings claim, Plaintiffs raise an Eighth Amendment challenge under the Excess Fines Clause (Count V) if Defendants retreat to the argument that Plaintiffs' equity was taken by civl forfeiture. The Excessive Fines Clause is now unquestionably incorporated

---

[15] See *Bott v. Mich. Dep't of Nat. Res.*, 327 N.W.2d 838, 852-854 (1982) (takings clause protects common law property rights).

[16] Oral argument was held on November 7, 2019. See https://courts.michigan.gov/ Courts/MichiganSupremeCourt/Clerks/Documents/2019-2020/2019_11%20call_ notice.pdf; see also https://youtu.be/8rXmQ_8XOzw

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

against the States via the Fourteenth Amendment. *Timbs v. Indiana*, 139 S.

Ct. 682 (2019). The Eighth Amendment to the United States Constitution

provides—

> Excessive bail shall not be required, <u>*nor excessive fines imposed*</u>, nor
> cruel and unusual punishments inflicted.

Defendants first argue that the Eighth Amendment does not *in-rem* civil

forfeitures. That argument was expressly rejected by the US Supreme in

1993. The US Supreme Court in *Austin*[17] expanded the applicability of the

"excessive fine" limitations to encompass "in kind" acts like *in-rem* civil

forfeitures.[18] Excessive fines prohibition now "cuts across the division

between the civil and the criminal law." *Austin, supra*, at 610. While most

excessive fine cases after *Austin* arises in the context of a drug dealers or

possessors, and the loss of property that was an instrumentality of the drug

crime, it is not limited exclusively to the criminal side of the law. *Austin, supra*,

at 608 (Eighth Amendment is not "expressly limited to criminal cases"); see

also See *Dubin v. Co. of Nassau*, 277 F.Supp.3d 366, 402-403 (E.D.N.Y.,

2017); *Matter of Prince v. City of N.Y.*, 966 NYS.2d 16 (App. Div., 2013).

---

[17] *Austin v. U.S.*, 509 U.S. 602 (1993).
[18] Undisputedly, Defendants' seizing of real property is referred to as an *in-rem* forfeiture in Michigan. *Smith v. Cliffs on the Bay Condo. Ass'n (After Remand)*, 245 Mich. App. 73, 75 (2001); M.C.L. § 211.78h(1).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

The majority in *Austin* first explained, broadly, it was expressly rejecting any notion that the excessive fine limitation cannot apply to a civil matter. *Austin, supra*, at 607-608. Instead, the Clause was "to limit the government's power *to punish*." *Id.*, at 609 (emphasis added). Second, "[t]he Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for *some offense*.'" *Id.*, at 610 (emphasis added). Notice they did not say 'for some crime.' Instead, *Austin* explains "the question is not… whether forfeiture… is civil or criminal, but rather whether it is punishment." *Id.* (emphasis added). "A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, ***is punishment***." *Id.* The Supreme Court left no doubt—"statutory *in-rem* forfeiture imposes punishment." *Id.*, at 614. A valid plausible claim has been stated to defeat the Rule 12(b)(6) pre-answer motion.

## VII.   Qualified immunity

The two treasurers were sued in their individual and official capacities in this case. The named treasurers, solely in their individual capacities, can try to assert the defense of qualified immunity—a two-part test.

The first step is to determine if there is a violation of a constitutional right; the second is to ask if the right at issue was clearly established when

the event occurred such that a reasonable officer would have known that his or her conduct violated it. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). Defendants point out that M.C.L. § 211.78m has never been held unconstitutional. That's just not true, but thatt is not the standard. An official action is *not* protected by qualified immunity only when the very action in question has previously been held unlawful; the unlawfulness needs only be "apparent" in the light of pre-existing law. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

> To determine whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits. An action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs.

*Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 898 (6th Cir. 2019). Defendants need *both* prongs to be entitled to the defense.[19]

The U.S. Supreme Court has held and has clearly established by *Lawton* that "[t]o withhold the surplus from the owner would be to violate the Fifth Amendment to the Constitution and to deprive him of his property without due process of law, or to take his property for public use without just compensation." *Lawton, supra*, at 150. Value in one's property is a

---

[19] This defense is solely and only available for officials sued in their personal or individual (not official) capacities. *Everson v. Leis*, 556 F.3d 484, 501 fn.7 (6th Cir. 2009).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

recognized Michigan common law property right. *Thom, supra*, at 613 (A partial destruction or diminution *in value* is a taking). Moreover, the Supreme Court has already explained that these Defendants "may not sidestep the Takings Clause by disavowing traditional property interests," or by otherwise redefining property rights from something into nothing. *Phillips v. Washington Legal Found.*, 524 U.S. 156, 167 (1998); *Webb's*, supra, at 160. Defendants fail both prongs.

As to the Excessive Fine claim, it is clearly established as unconstitutional to undertake a grossly excessive *in-rem* civil forfeiture. *Austin, supra*; *U.S. v. Bajakajian*, 524 U.S. 321 (1998). Defendants fail again as Plaintiffs have plausibly pled—at this stage—that this factual circumstance is a violative in-rem civil forfeiture. Qualified immunity fails.

## A.    Blind adherence

The individual treasurers suggest that they were merely following a state statute and that should provide "automatic" qualified immunity. The US Supreme Court has expressly rejected that absolutist position. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) (recognizing no immunity for grossly and flagrantly unconstitutional state laws). So has the Sixth Circuit. *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 442 (6th Cir. 2016) (enforcement of a state statute "does not automatically entitle officials to qualified immunity");

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

25

*Leonard v. Robinson*, 477 F.3d 347, 359 (6th Cir. 2007); *Sandul v. Larion*, 119 F.3d 1250 (6th Cir. 1997). The assertion is roundly rejected because "under the Supremacy Clause, public officials have an obligation to follow the Constitution even in the midst of a contrary directive from a supervisor or in a policy." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010); see also *O'Rourke v. Hayes*, 378 F3d 1201, 1210 fn.5 (11th Cir. 2004).; see also Const 1963, art XI, § 1. "Public officials owe their allegiance to the Constitution *first*, federal laws *second*, and state laws *third*." *Alleghany Corp v. Haase,* 896 F.2d 1046, 1055 (7th Cir. 1990) (EASTERBROOK, J, concurring) (emphasis added). As such, qualified immunity does not exist due to the <u>established</u> and <u>clearly apparent</u> unconstitutionality of seizing excess equity without an actual debt via *Lawton*, *Austin*, and *Bajakajian*.

## RELIEF REQUESTED

The Court is requested to deny Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Date: November 8, 2019                    RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
Counsel for Plaintiffs & Proposed Class

MATTHEW E. GRONDA (P73693)
Counsel for Plaintiffs & Proposed Class

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**CERTIFICATE OF SERVICE**

I, the undersigned attorney of record, hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel or parties of record.

Date: November 8, 2019          RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
Counsel for Plaintiffs and Proposed Class

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

27