# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

ARKONA, LLC,
DIANNE KASBOB,

    Plaintiffs,

v.

COUNTY OF CHEBOYGAN, BUFFY JO
WELDON, LINDA A. CRONAN, COUNTY
OF MONROE, KAY SISUNG,

    Defendants.

_____/

Case No. 1:19-cv-12372
Hon. Thomas L. Ludington
Magistrate Patricia T. Morris

## ORDER STAYING CASE

Plaintiffs Arkona, LLC ("Arkona") and Dianne Kasbob have filed a complaint against Defendants Cheboygan County, Buffy Jo Weldon, Linda A. Cronan, Monroe County, and Kay Sisung.

Plaintiff Arkona claims that it owned real property in Cheboygan County with a fair market value of at least $505,000. ECF No. 8 at PageID.57. Arkona had a tax delinquency of approximately $39,750. Cronan, as Cheboygan County Treasurer, subsequently sold the property for $307,000.[1] ECF No. 8 at PageID.56; ECF No. 8-2 at PageID.79. Arkona claims that Cronan and Cheboygan County took or destroyed $465,250 of the property's equity. ECF no. 8 at PageID.57.

Plaintiff Kosbab claims that she owned real property in Monroe County with a fair market value of at least $22,000. ECF No. 8 at PageID.59. The property had a tax delinquency of approximately $2,500. *Id.* at PageID.59. Sisung, as the Monroe County Treasurer, subsequently

---

[1] Weldon is also named as a Defendant because she is the current Cheboygan County Treasurer.

sold the property for $28,250. Kosbab claims that Sisung and Monroe County took or destroyed $25,750 of the property's equity.

On October 7, 2019, Defendants filed a motion to dismiss Plaintiffs' complaint. ECF No. 11. The next month, Plaintiff filed a motion for class certification. ECF No. 19. The parties were then ordered to show cause why the case should not be stayed pending the Sixth Circuit's resolution of the case *Freed v. Thomas*, Case No. 18-2312 (6th Cir.). For the following reasons, the case will be stayed pending the Sixth Circuit's resolution of *Freed*.

**I.**

Plaintiffs argue that Defendants are seizing property and maintaining the equity pursuant to Michigan's General Property Tax Act ("GPTA"), MCL. §211.78m(8) which provides:

> (8) A foreclosing governmental unit shall deposit the proceeds from the sale of property under this section into a restricted account designated as the "delinquent tax property sales proceeds for the year _____". The foreclosing governmental unit shall direct the investment of the account. The foreclosing governmental unit shall credit to the account interest and earnings from account investments. Proceeds in that account shall only be used by the foreclosing governmental unit for the following purposes in the following order of priority:
>
> (a) The delinquent tax revolving fund shall be reimbursed for all taxes, interest, and fees on all of the property, whether or not all of the property was sold.
>
> (b) All costs of the sale of property for the year shall be paid…

MCL §211.78m(8); *see also* ECF No. 8 at PageID.62.

Plaintiff contends that:

Defendants COUNTY OF CHEBOYGAN and COUNTY OF MONROE and their respective treasurers are and have been acting to voluntarily enforce an unconstitutional statute which each has willingly assumed to undertake pursuant to discretion granted by MCL 211.78;

ECF No. 8 at PageID.62.

Plaintiffs claim that Defendants' sale of their property constituted a taking in violation of the Fifth and Fourteenth Amendment, an imposition of an excessive fine in violation of the Eighth Amendment, an inverse condemnation, and a violation of the Michigan Constitution. ECF No. 8 at PageID.65-75.

**II.**

**A.**

In their motion to dismiss, Defendants argue that this Court lacks jurisdiction to hear Plaintiffs' case because of the Tax Injunction Act ("TIA") which provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a *plain, speedy and efficient remedy* may be had in the courts of such State.

28 U.S.C. §1341 (emphasis added). Defendants contend that because Michigan provides an adequate remedy for aggrieved taxpayers, the TIA prevents this Court from exercising jurisdiction over Plaintiffs' claim.

Plaintiffs claim that the TIA does not apply to their complaint because they are not challenging the "assessment, levy or collection" of the Michigan tax. Instead, they are challenging "what happens *after* the tax administration process is done and over with, i.e. Defendants keeping and retaining the equity–after full payment of all tax-plus-penalties delinquencieswhich [sic] the government no longer has a lawful debt to collect upon." ECF No. 16 at PageID.187-188 (emphasis present in original).

Plaintiffs cite to a D.C. District Court case, *Coleman v. District of Columbia*, 70 F.Supp.3d 58 (2014), with similar claims. The plaintiff in *Coleman* contested the government's "taking of the entire equity in his home," claiming that the government "provided him no compensation for the loss of that equity, even though its value far exceed[ed] the taxes, penalties, costs, and interest he

owed." *Coleman* 70 F.Supp.3d at 62-63. The plaintiff did not dispute that the government was permitted to sell his house in order to satisfy his delinquent property taxes.

In deciding whether the government had engaged in a taking, the *Coleman* court relied upon the Supreme Court case *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank* which provides

> [T]he State's action is not complete in the sense of causing a constitutional injury unless or until the State fails to provide an adequate postdeprivation remedy for the property loss. Likewise, because the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action here is not "complete" until the State fails to provide adequate compensation for the taking.

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985) (quotations omitted). The *Coleman* court found that the District of Columbia did not have an adequate postdeprivation remedy for the property loss because there was "no basis to infer the existence of an independent inverse-condemnation action under D.C. law." *Coleman* 70 F.Supp.3d at 71. The court, finding for the plaintiff, held that "the statute at issue in this case expressly provides for the taking of plaintiff's surplus equity and contains no procedure for the recovery of that surplus." *Id.*

**B.**

The next year, a case was before Judge Berg in the Eastern District of Michigan with facts almost identical to those in *Coleman* and in this case. Judge Berg distinguished the case before him from *Coleman* as follows:

> Unlike Michigan, the District of Columbia did not provide the plaintiff an avenue to bring an inverse condemnation claim to recover any surplus equity…
>
> In *Coleman*, the Court recognized that the District of Columbia does not have a state constitution-a common source for a state inverse condemnation remedy. Further, the D.C. statute at issue in *Coleman* expressly provided for the taking of the plaintiff's surplus equity and contained no procedure for the recovery of that surplus. Thus, *Coleman* held that, "because there is no 'reasonable, certain, and

owed." *Coleman* 70 F.Supp.3d at 62-63. The plaintiff did not dispute that the government was permitted to sell his house in order to satisfy his delinquent property taxes.

In deciding whether the government had engaged in a taking, the *Coleman* court relied upon the Supreme Court case *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank* which provides

> [T]he State's action is not complete in the sense of causing a constitutional injury unless or until the State fails to provide an adequate postdeprivation remedy for the property loss. Likewise, because the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action here is not "complete" until the State fails to provide adequate compensation for the taking.

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985) (quotations omitted). The *Coleman* court found that the District of Columbia did not have an adequate postdeprivation remedy for the property loss because there was "no basis to infer the existence of an independent inverse-condemnation action under D.C. law." *Coleman* 70 F.Supp.3d at 71. The court, finding for the plaintiff, held that "the statute at issue in this case expressly provides for the taking of plaintiff's surplus equity and contains no procedure for the recovery of that surplus." *Id.*

**B.**

The next year, a case was before Judge Berg in the Eastern District of Michigan with facts almost identical to those in *Coleman* and in this case. Judge Berg distinguished the case before him from *Coleman* as follows:

> Unlike Michigan, the District of Columbia did not provide the plaintiff an avenue to bring an inverse condemnation claim to recover any surplus equity…
>
> In *Coleman*, the Court recognized that the District of Columbia does not have a state constitution-a common source for a state inverse condemnation remedy. Further, the D.C. statute at issue in *Coleman* expressly provided for the taking of the plaintiff's surplus equity and contained no procedure for the recovery of that surplus. Thus, *Coleman* held that, "because there is no 'reasonable, certain, and

owed." *Coleman* 70 F.Supp.3d at 62-63. The plaintiff did not dispute that the government was permitted to sell his house in order to satisfy his delinquent property taxes.

In deciding whether the government had engaged in a taking, the *Coleman* court relied upon the Supreme Court case *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank* which provides

> [T]he State's action is not complete in the sense of causing a constitutional injury unless or until the State fails to provide an adequate postdeprivation remedy for the property loss. Likewise, because the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action here is not "complete" until the State fails to provide adequate compensation for the taking.

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985) (quotations omitted). The *Coleman* court found that the District of Columbia did not have an adequate postdeprivation remedy for the property loss because there was "no basis to infer the existence of an independent inverse-condemnation action under D.C. law." *Coleman* 70 F.Supp.3d at 71. The court, finding for the plaintiff, held that "the statute at issue in this case expressly provides for the taking of plaintiff's surplus equity and contains no procedure for the recovery of that surplus." *Id.*

**B.**

The next year, a case was before Judge Berg in the Eastern District of Michigan with facts almost identical to those in *Coleman* and in this case. Judge Berg distinguished the case before him from *Coleman* as follows:

> Unlike Michigan, the District of Columbia did not provide the plaintiff an avenue to bring an inverse condemnation claim to recover any surplus equity…
>
> In *Coleman*, the Court recognized that the District of Columbia does not have a state constitution-a common source for a state inverse condemnation remedy. Further, the D.C. statute at issue in *Coleman* expressly provided for the taking of the plaintiff's surplus equity and contained no procedure for the recovery of that surplus. Thus, *Coleman* held that, "because there is no 'reasonable, certain, and

adequate' state remedy, *Williamson,* 473 U.S. at 194, [the plaintiff's] claim [was] ripe for resolution." *Coleman* at *9.

> Unlike in *Coleman,* Michigan's State Constitution provides that: "Private property shall not be taken for public use without just compensation therefor [sic] being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record." Mich. Const. 1963, Art. 10, § 2. Michigan courts clearly recognize the right to bring an inverse condemnation claim. *See, e.g., Merkur Steel Supply v. Detroit,* 261 Mich. App. 116, 680 N.W.2d 485 (2004). Consequently, before a taking claim may be considered ripe for adjudication in this Court, Plaintiffs must first bring an inverse condemnation claim in state court, seeking to recover their forfeited surplus equity.

*Rafaeli, LLC v. Wayne County*, 2015 WL 3522546, at *9 (E.D. Mich. June 4, 2015). Judge Berg's reasoning would appear to also apply to Plaintiffs' claim in this case and support the proposition that this Court lacks jurisdiction.

However, the requirement in *Williamson* that a plaintiff with a takings claim first seek relief in state court was recently called into question by the Supreme Court in *Knick v. Township of Scott, Pennsylvania*. 139 S. Ct. 2162, 2179 (2019) ("The state-litigation requirement of *Williamson County* is overruled.").[2] The majority opinion provides:

> Contrary to *Williamson County*, a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it. The Clause provides: "[N]or shall private property be taken for public use, without just compensation." It does not say: "Nor shall private property be taken for public use, without an available procedure that will result in compensation." If a local government takes private property without paying for it, that government has violated the Fifth Amendment—just as the Takings Clause says—without regard to subsequent state court proceedings. And the property owner may sue the government at that time in federal court for the "deprivation" of a right "secured by the Constitution."

*Id.*

### III.

---

[2] Justice Roberts delivered the majority opinion for the Court, joined by Justices Alito, Gorsuch, and Kavanaugh. Justice Thomas concurred with the holding. Justice Kagan delivered a dissenting opinion, joined by Justices Ginsburg, Breyer, and Sotomayor.

The same issue appears to be before the Sixth Circuit in another case. In 2017, one of Plaintiffs' attorneys, Philip L. Ellison, filed a similar complaint on behalf of Donald Freed before Judge Bernard Friedman, also of the Eastern District of Michigan. *Freed v. Thomas*, Case No. 17-13519. The facts are strikingly similar to the facts here. Freed owned real property in Elwell, Michigan in Gratiot County. *Id.*, ECF No. 1 at PageID.3. Gratiot County valued the property at $97,000. Freed owed taxes and interest totaling $1,109.06. Freed claimed that Thomas seized and sold the property on behalf of Gratiot County, maintaining the equity. Freed claimed that the sale of the property constituted a taking in violation of the Fifth and Fourteenth Amendment as well as an excessive fine in violation of the Eighth Amendment. *Id.* at PageID.4-5.

Judge Friedman dismissed Freed's claim for lack of subject matter jurisdiction, reasoning that "an adequate remedy exists in Michigan courts." *Freed v. Thomas*, 2018 WL 5831013, *3 (E.D. Mich. Nov. 7, 2018). He further held that "[r]egardless of the label plaintiff chooses to put on this claim, the Court may not consider it because the effect is to 'challenge state tax laws,' a challenge the Tax Injunction Act and comity prevent this Court from entertaining." *Id.*

Freed subsequently appealed Judge Friedman's decision to the Sixth Circuit. During the appeal process, the Supreme Court issued *Knick v. Township of Scott*. The next week, Freed filed a letter with the Sixth Circuit, claiming that "[g]iven the *Knick* decision, federal jurisdiction now clearly exists for Freed to press his Fifth and Eighth Amendment claims, via §1983, <u>in federal court</u>." *Freed v. Thomas*, Case No. 18-2312, D. 54 (emphasis in original). On August 19, 2019, the Sixth Circuit directed the parties to file supplemental briefing "as to if and how the Supreme Court's recent decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), affects this case." *Id.*, D. 58. The Sixth Circuit has yet to issue an opinion.

The facts in *Freed v. Thomas* and the facts before this Court are almost identical. The claims for relief under the Fifth, Eighth, and Fourteenth Amendments are the same. Most importantly, one of the major questions regarding whether this Court has jurisdiction considering *Knick* is also the same. The Court sees no reason to resolve this issue while it is pending before the Sixth Circuit.

Plaintiff requests that the Court grant his motion of class certification before the case is stayed. The request will not be granted. Until the Sixth Circuit decides *Freed*, it is unclear whether the Court has jurisdiction to hear the case.

**IV.**

Accordingly, it is **ORDERED** that the case is **STAYED** pending the Sixth Circuit's decision in *Freed v. Thomas*, Case No. 18-2312 (6th Cir.). The parties shall file a notice with the Court within 30 days of the Sixth Circuit issuing a mandate.

Dated: January 10, 2020
s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge