**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

ARKONA, LLC,
DIANNE KASBOB,

       Plaintiffs,

v.

COUNTY OF CHEBOYGAN, BUFFY JO
WELDON, LINDA A. CRONAN,
COUNTY OF MONROE, KAY SISUNG,

       Defendants.

_____/

Case No. 1:19-cv-12372
Hon. Thomas L. Ludington
Magistrate Patricia T. Morris

**ORDER LIFTING STAY AND GRANTING MOTION TO CERTIFY CLASS**

**I.**

Plaintiffs Arkona, LLC ("Arkona") and Dianne Kasbob have filed a complaint against Defendants Cheboygan County, Buffy Jo Weldon, Linda A. Cronan, Monroe County, and Kay Sisung. Plaintiff Arkona claims that it owned real property in Cheboygan County with a fair market value of at least $505,000. ECF No. 8 at PageID.57. Arkona had a tax delinquency of approximately $39,750. Cronan, as Cheboygan County Treasurer, subsequently sold the property for $307,000.[1] ECF No. 8 at PageID.56; ECF No. 8-2 at PageID.79. Arkona claims that Cronan and Cheboygan County took or destroyed $465,250 of the property's equity. ECF no. 8 at PageID.57.

Plaintiff Kosbab claims that she owned real property in Monroe County with a fair market value of at least $22,000. ECF No. 8 at PageID.59. The property had a tax delinquency of

---

[1] Weldon is also named as a Defendant because she is the current Cheboygan County Treasurer.

approximately $2,500. *Id.* at PageID.59. Sisung, as the Monroe County Treasurer, subsequently sold the property for $28,250. Kosbab claims that Sisung and Monroe County took or destroyed $25,750 of the property's equity.

**A.**

Plaintiffs' complaint alleges that Defendants are seizing property and maintaining the equity pursuant to Michigan's General Property Tax Act ("GPTA"), MCL. §211.78m(8) which provides:

> (8) A foreclosing governmental unit shall deposit the proceeds from the sale of property under this section into a restricted account designated as the "delinquent tax property sales proceeds for the year _____". The foreclosing governmental unit shall direct the investment of the account. The foreclosing governmental unit shall credit to the account interest and earnings from account investments. Proceeds in that account shall only be used by the foreclosing governmental unit for the following purposes in the following order of priority:
>
> (a) The delinquent tax revolving fund shall be reimbursed for all taxes, interest, and fees on all of the property, whether or not all of the property was sold.
>
> (b) All costs of the sale of property for the year shall be paid…

MCL §211.78m(8); *see also* ECF No. 8 at PageID.62.

Plaintiff contends that:

Defendants COUNTY OF CHEBOYGAN and COUNTY OF MONROE and their respective treasurers are and have been acting to voluntarily enforce an unconstitutional statute which each has willingly assumed to undertake pursuant to discretion granted by MCL 211.78;

ECF No. 8 at PageID.62. Plaintiffs claim that Defendants' sale of their property constituted a taking in violation of the Fifth and Fourteenth Amendment, an imposition of an excessive fine in violation of the Eighth Amendment, an inverse condemnation, and a violation of the Michigan Constitution. ECF No. 8 at PageID.65-75.

**B.**

On July 17, 2020, the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland County*. The facts are similar to the facts of this case, specifically the plaintiff's property was seized by the defendant county for unpaid property taxes. The defendant county sold the property and retained the surplus funds under the GPTA. The Michigan Supreme Court held that such an action is unconstitutional.

> Once defendants foreclosed on plaintiffs' properties, obtained title to those properties, and sold them to satisfy plaintiffs' unpaid taxes, interest, penalties, and fees related to the foreclosures, any surplus resulting from those sales belonged to plaintiffs. That is, after the sale proceeds are distributed in accordance with the GPTA's order of priority, any surplus that remains is the property of plaintiffs, and defendants were required to return that property to plaintiffs. Defendants' retention of those surplus proceeds under the GPTA amounts to a taking of a vested property right requiring just compensation. To the extent the GPTA permits defendants to retain these surplus proceeds and transfer them into the county general fund, the GPTA is unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties.

*Rafaeli, LLC v. Oakland* County, Case No. 156849 at 37, (Mich. July 17, 2020).

## II.

On October 7, 2019, Defendants filed a motion to dismiss Plaintiffs' complaint. ECF No. 11. The next month, Plaintiffs filed a motion for class certification. ECF No. 19. The parties were then ordered to show cause why the case should not be stayed pending resolution of the case *Freed v. Thomas*, Case No. 18-2312 (6th Cir.). *Freed* presents facts similar to those in this case and the Sixth Circuit is determining whether federal jurisdiction exists. After the parties responded to the order to show cause, the Court stayed the case pending resolution of *Freed*. ECF No. 26.

Plaintiffs have now filed an emergency motion to lift the stay and determine their motion for class certification. They contend that due to the recent decision by the Michigan Supreme Court

in *Rafaeli*, a "potential flood of litigation may be coming to the detriment of this putative class if this Court delays class certification." ECF No. 27 at PageID.590.

*Rafaeli* does not resolve whether this Court has federal jurisdiction. That question cannot be resolved until the Sixth Circuit decides *Freed*. However, in the interests of efficiency and timeliness, Plaintiffs' motion to lift the stay and their motion to certify the class will be granted.[2]

### III.

Defendants contend that the Court should not resolve Plaintiffs' motion for class certification until after the Court has resolved Defendants' motion to dismiss and determined whether federal jurisdiction exists. However, doing so would delay the litigation of the case and potentially compromise the effectiveness of the putative class. This would be contrary to Rule 23(c)(1)(A) which requires that class certification be determined "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(a).

Plaintiff seeks to certify the following class:

> All property owners formerly owning property from within the counties of Monroe and Cheboygan who, since January 1, 2013, had said property seized by Defendants via the General Property Tax Act, MCL 211.78 et seq, which was worth more and/or was sold at tax auction for more than the total tax delinquency and was not refunded the excess/surplus equity but excluding any property owner who has filed their own post-forfeiture civil lawsuit to obtain such relief.

ECF No. 19 at PageID.371.

Federal Rule of Civil Procedure 23, the rule governing class actions, requires a two-stage analysis for determining whether class certification is appropriate. At stage (a), the plaintiff must

---

[2] The time has not yet elapsed for Defendants to file a response to Plaintiffs' emergency motion to lift the stay. However, the Court enacted the stay sua sponte. It did not enact the stay in response to a motion by either party. Accordingly, the Court has wide discretion in its application of the current stay and a response to the motion from Defendants are not necessary. Furthermore, the Plaintiffs' motion to certify class has been fully briefed by both parties. The motion is ready for review.

establish four elements — numerosity, commonality, typicality, and adequacy of representation. Subsection (a) of Rule 23 provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see generally Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 617 (6th Cir. 2007).

At stage (b), the plaintiff must satisfy the requirements of one of the types of class actions set forth in Rule 23(b). Here, Plaintiff moves for certification under the "predominance" subsection set forth in subsection (b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see generally Powers*, 501 F.3d at 617.

A court's analysis of a plaintiff's compliance with the requirements of Rule 23 must be "rigorous." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "Rule 23," the Supreme Court instructs, "does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. Moreover, a class can be certified "only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Frequently that 'rigorous analysis' will

entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.* (citations and internal quotation marks omitted) (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982)).

### A.

First, the class is sufficiently numerous to make joinder "impracticable." Fed. R. Civ. P. 23(a)(1); *see generally* 32B Am. Jur. 2d Fed. Courts *When Joinder is Impracticable* § 1608 (2012). Impracticability is not impossibility — rather, "class representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 229 (D.N.J. 2005) (quoting *In re the Prudential Ins. Co. of Am.*, 962 F. Supp. 450, 495, 510 (D.N.J. 1997)); *see Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 168 (E.D. Mich. 2006) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."), *aff'd* 511 F.3d 554 (6th Cir. 2007). "There is no specific number below which class action relief is automatically precluded," the Sixth Circuit notes, elaborating: "Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors Corp.*, 532 F2d 511, 523 n.24 (1976); *cf. Flood v. Dominguez*, 270 F.R.D. 413, 417(N.D. Ind. 2010) ("Generally speaking, when the putative class consists of more than 40 members, numerosity is met, but there is nothing magical about that number.").

Plaintiffs represent that they have already identified at least 434 members of the proposed class. Common sense suggests that the joinder of more than four hundred people is not practicable. Plaintiffs fulfill the requirements of numerosity.

**B.**

Second, the class shares common issues of fact and law.  Commonality, as noted, requires a plaintiff to demonstrate "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "That language is easy to misread," the Supreme Court cautions, "since any competently crafted class complaint literally raises common questions."  *Wal-Mart*, 131 S. Ct. at 2551 (internal alterations and quotation marks omitted) (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).  The common issue must involve — indeed, resolve — an essential element of the class members' claim:

> Their claims must depend upon a common contention — for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Wal-Mart*, 131 S. Ct. at 2551.  The Sixth Circuit similarly notes, "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification."  *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)).

In this case, the putative class are property owners whose property Monroe and Cheboygan seized "which was worth more and/or was sold at tax auction for more than the total tax delinquency and was not refunded the excess/surplus equity." ECF No. 19 at PageID.371. Legally, the question of whether this is a cognizable constitutional injury is the same for each of the putative class members.  As in *Powers*, the dispositive facts and law are the same as to each class member.[3] Plaintiff has established the commonality required by Rule 23(a)(2).

---

[3] This should not be interpreted to mean that Plaintiffs are correct as a substantive matter that Defendants' retention of the surplus was a cognizable constitutional injury.

Defendants contend that commonality does not exist for the putative class because the claims for each of the two current Plaintiffs differ. Defendants' response brief provides:

> Plaintiff Dianne Kosbab claims that she had property with a fair-market value of $22,000 that was sold for a higher price of $28,250 to cover a tax delinquency of $2,500. She is seeking to recover that portion of the tax auction sale price that exceeds the $2,500 delinquency.
>
> The situation of Arkona, LLC, is fundamentally different. Arkona claims its property had a fair-market value of $505,000, which Cheboygan County sold at a "non-fair market value price of $307,000" to cover a tax delinquency of $39,750. Contrary to Kosbab, Arkona does not seek to recover the difference between the sale price and the tax delinquency. Rather, Arkona demands to recover the alleged fair-market value, minus the tax delinquency, including the amount over and above what the County received at sale.

ECF No. 21 at PageID.518-519.

Defendants have identified a difference in damages between the two Plaintiffs, not a difference in injury. As explained by the Sixth Circuit, "No matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013). Though the putative class members may have different damages, they all share the same question of law, specifically whether Defendants engaged in a taking when they retained the surplus funds from the sale of Plaintiffs' properties.

## C.

Plaintiff has likewise established typicality as required by Rule 23(a)(3). Conceptually, typicality and commonality may be distinct. As a practical matter, however, they "tend to merge." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 158 n.13 (1982); *see generally Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality.").

The purpose of the requirement, the Court explains, is a screening mechanism "for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13.

Here, Plaintiffs' alleged constitutional injury is typical of the class: Defendants retained surplus funds after seizing Plaintiffs' property for tax delinquency. Plaintiffs have established the commonality required by Rule 23(a)(3).

### D.

Finally, Plaintiffs have established that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement again "tends to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (internal quotation mark omitted) (quoting *Falcon*, 457 U.S. at 158 n.13).

The purpose of the requirement, the Court explains, is "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625 (citing *Falcon*, 457 U.S. at 157–58). The Sixth Circuit therefore holds that "to satisfy the adequate representation requirements under Rule 23 . . . there must be an absence of a conflict of interest, and the presence of common interests and injury." *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998).

Here, there is no evidence of a conflict of interest. The incentives of the class members are aligned with each other and with Plaintiffs' counsel: maximizing recovery. Moreover, Plaintiffs' counsel appear qualified to act as class counsel. They are counsel in other cases addressing this

same issue and have presented novel claims of constitutional law in other lawsuits. Plaintiffs have established the adequacy of representation required by Rule 23(a)(4).

**E.**

Finally, the common questions pertinent to this class "predominate over any questions affecting only individual members" and a class action is a superior vehicle "for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To establish predominance, the plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (quotation marks omitted) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)). The Supreme Court explains that the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

In this case, whether Defendants engaged in a taking by retaining the surplus funds from the sale of properties is a specific legal question that is subject to generalized proof by all members of the putative class. Moreover, class certification is the superior method for resolving these claims rather than having plaintiffs pursue recovery individually in various courts.

**IV.**

Accordingly, it is **ORDERED** that the motion to lift stay, ECF No. 27, is **GRANTED**.

It is further **ORDERED** that the stay, ECF No. 26, is **LIFTED**.

It is further **ORDERED** that Plaintiffs' motion to certify class and to appoint class counsel, ECF No. 19, is **GRANTED**. The class is certified and Plaintiffs' counsel is appointed as class counsel.

Dated: July 30, 2020                                         s/Thomas L. Ludington
                                                             THOMAS L. LUDINGTON
                                                             United States District Judge