UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARKONA, LLC,
DIANNE KASBOB,

    Plaintiffs,

v.

COUNTY OF CHEBOYGAN, BUFFY JO
WELDON, LINDA A. CRONAN,
COUNTY OF MONROE, KAY SISUNG,

    Defendants.

_____/

Case No. 19-CV-12372
Hon. Thomas L. Ludington
Magistrate Judge Patricia T. Morris

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, DISMISSING THE INDIVIDUAL DEFENDANTS, DISMISSING COUNTS II, IV, AND V AGAINST THE COUNTY DEFENDANTS, AND DENYING AS MOOT PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY**

On August 11, 2019, Plaintiff Arkona, LLC filed a complaint on behalf of itself and all other similarly situated against Defendants Cheboygan County, and county officials Buffy Jo Weldon and Linda A. Cronan in their individual and official capacities. ECF No. 1. On September 23, 2019, an amended complaint was filed adding Plaintiff Dianne Kosbab and Defendants Monroe County and county official Kay Sisung. ECF No. 8. Plaintiffs seek damages based on Defendants' retention of surplus proceeds from tax foreclosure sales. *Id.* On October 7, 2019, Defendants moved to dismiss the Amended Complaint. ECF No. 11. On January 10, 2020, the case was stayed pending a decision in *Freed v. Thomas*, No. 18-2312 (6th Cir.). ECF No. 26. On July 30, 2020, the stay was lifted, the class was certified, and class counsel was appointed. ECF No. 28. On September 30, 2020, the Sixth Circuit decided *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020). For

the reasons stated below, Defendants' Motion to Dismiss will be granted in part and denied in part, the Individual Defendants will be dismissed, and Counts II, IV, V will be dismissed.

## I.

### A.

Plaintiff Arkona alleges that it owned real property in Cheboygan County with a fair market value of at least $505,000. ECF No. 8 at PageID.57. As of 2016, the property had accumulated a tax delinquency of approximately $39,750. *Id.* at PageID.56. Defendant Linda Cronan, as Cheboygan County Treasurer,[1] thus foreclosed on the property and took ownership thereof. *Id.* The property was later sold at auction for $307,000. *Id.* After the sale, the Cheboygan County Defendants kept the difference between the sale price at auction and the tax delinquency ($267,250). *Id.* at PageID.57. Plaintiff Arkona claims that the Cheboygan County Defendants took or destroyed $465,250 of the property's equity. *Id.*

Similarly, Plaintiff Kosbab alleges that she owned real property in Monroe County with a fair market value of at least $22,000. *Id.* at PageID.59. As of 2015, the property had accumulated a tax delinquency of approximately $2,500. *Id.* Defendant Kay Sisung, as Monroe County Treasurer, thus foreclosed on the property and took ownership thereof. *Id.* The property was subsequently sold at auction for $28,250. *Id.* Like the Cheboygan County Defendants, the Monroe County Defendants kept the difference between the auction price and the tax delinquency ($25,750). *Id.* at PageID.60. Plaintiff Kosbab claims that the Monroe County Defendants took or destroyed $25,750 of the property's equity. *Id.*

---

[1] Defendant Buffy Jo Weldon is the current treasurer of Cheboygan County.

**B.**

Plaintiffs allege five counts against Defendants Cheboygan County and Monroe County (the "County Defendants") and county officials Buffy Jo Weldon, Linda A. Cronan, and Kay Sisung (the "Individual Defendants"): taking without just compensation in violation of the Fifth and Fourteenth Amendments (Counts I and II); inverse condemnation (Count III); violation of article X, section 2 of the Michigan Constitution (Count IV); and excessive fine in violation of the Eighth Amendment and Fourteenth Amendments (Count V). ECF No. 8 at PageID.65–75.

In foreclosing, selling, and retaining the surplus proceeds from Plaintiffs' properties, Defendants were exercising their authority as foreclosing government unit ("FGU") under Michigan's General Property Tax Act (the "GPTA"), M.C.L. § 211.1 *et seq*. The GPTA provides, in relevant part,

> (8) A foreclosing governmental unit shall deposit the proceeds from the sale of property under this section into a restricted account designated as the "delinquent tax property sales proceeds for the year _____". The foreclosing governmental unit shall direct the investment of the account. The foreclosing governmental unit shall credit to the account interest and earnings from account investments. Proceeds in that account shall only be used by the foreclosing governmental unit for the following purposes in the following order of priority:
>
> > (a) The delinquent tax revolving fund shall be reimbursed for all taxes, interest, and fees on all of the property, whether or not all of the property was sold.
> >
> > [. . .]
> >
> > (f) All or a portion of any remaining balance, less any contingent costs of title or other legal claims described in subdivisions (a) through (f), may subsequently be transferred into the general fund of the county by the board of commissioners.

MCL §211.78m(8).

**C.**

On October 7, 2019, Defendants moved to dismiss the Amended Complaint, arguing that, *inter alia*, this Court lacks subject matter jurisdiction under the Tax Injunction Act and principles of comity. ECF No. 11. Timely response and reply briefs were filed. ECF Nos. 16, 17. On November 25, 2019, Plaintiffs moved to certify the class and appoint class counsel. ECF No. 19. Before either the Motion to Dismiss or Motion to Certify were decided, this case was stayed pending a decision in *Freed v. Thomas*, No. 18-2312 (6th Cir.), a case which presented nearly identical facts, substantive arguments, and jurisdictional questions. ECF No. 26.

On July 17, 2020, the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland Cty.*, No. 156849, 2020 WL 4037642 (Mich. July 17, 2020). *Rafaeli* was an inverse condemnation action brought by Michigan taxpayers alleging that it was unconstitutional for counties to retain surplus proceeds from tax sales as prescribed by the GPTA. *Rafaeli*, 2020 WL 4037642, at *5. The Michigan Supreme Court held that the retention of surplus proceeds under the GPTA constituted a taking without just compensation in violation of Michigan's Taking Clause. *Rafaeli*, 2020 WL 4037642, at *21–22.

On July 23, 2020, Plaintiffs filed an emergency motion to lift the stay, certify the class, and appoint class counsel. ECF No. 27. Plaintiffs warned that given *Rafaeli*, "a potential flood of litigation" threatened the efficiency of the putative class. *Id.* at PageID.590. This Court agreed, and on July 30, 2020, the stay was lifted, the class was certified, and class counsel was appointed. ECF No. 28. The certified class is as follows:

> All property owners formerly owning property from within the counties of Monroe and Cheboygan who, since January 1, 2013, had said property seized by Defendants via the General Property Tax Act, MCL 211.78 et seq, which was worth more and/or was sold at tax auction for more than the total tax delinquency and was not refunded the excess/surplus equity but excluding any property owner who has filed their own post-forfeiture civil lawsuit to obtain such relief.

ECF No. 28 at PageID.716. On September 30, 2020, the Sixth Circuit decided *Freed v. Thomas*, No. 18-2312, 2020 WL 5814503 (6th Cir. Sept. 30, 2020), holding that neither the Tax Injunction Act nor principles of comity preclude an action against Michigan counties for surplus proceeds retained under the GPTA. *Freed*, 2020 WL 5814503, at *5–6.

Defendants' Motion to Dismiss is now ripe for review. For the reasons set forth below, Defendants' Motion to Dismiss will be granted in part and denied in part, the Individual Defendants will be dismissed, and Counts II, IV, and V will be dismissed against the County Defendants.

## II.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679–79 (quotations and citation omitted).

## III.

Defendants raise several independent arguments for dismissing the Amended Complaint. The threshold issues of jurisdiction, immunity, and res judicata will be addressed first.

**A.**

As stated by this Court in a related case, "*Freed* conclusively answered the jurisdictional questions raised by Defendants. According to the Sixth Circuit, neither the Tax Injunction Act nor principles of comity preclude subject matter jurisdiction over a suit to recover surplus proceeds retained pursuant to the GPTA." *Fox v. Cty. of Saginaw*, No. 19-CV-11887, 2020 WL 6118487, at *4 (E.D. Mich. Oct. 16, 2020) (citing *Freed*, 2020 WL 5814503, at *5–6). Accordingly, Defendants' various arguments regarding the Tax Injunction Act and principles of comity—all of which were raised before the Sixth Circuit decided *Freed*—must be rejected.

**B.**

With respect to the individual capacity claims (Counts I, II, and V), the Individual Defendants assert qualified immunity. Qualified immunity is a judicially crafted doctrine that "shield[s] [public officials] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Public officials thus are eligible for qualified immunity if (1) they did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). "Both inquiries are 'objective,' as they turn on what the law is today and whether it was clearly established at the time of the challenged action." *Id.* at 440 (citing *Harlow*, 457 U.S. at 818–19).

Plaintiffs' individual capacity claims wither under the second inquiry; namely, whether Plaintiffs allege the violation of a clearly established right. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing

violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The same deference extends to public officials enforcing a statute. "When public officials implement validly enacted state laws that no court has invalidated, their conduct typically satisfies the core inquiry—the 'objective reasonableness of an official's conduct'—that the immunity doctrine was designed to test." *Husted*, 810 F.3d at 441. Indeed, "the Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated." *Id.* (emphasis original).

Plaintiffs seek to hold the Individual Defendants liable for retaining surplus proceeds consistent with the GPTA. The GPTA was properly enacted by the legislature, and before the Michigan Supreme Court decided *Rafaeli*, no court had invalidated it. In fact, the Michigan Court of Appeals had rejected the takings claim as "without merit." *Rafaeli, LLC v. Oakland Cty.*, No. 330696, 2017 WL 4803570, at *4 (Mich. Ct. App. Oct. 24, 2017). Plaintiffs, however, insist on a different reading of *Husted*, seeing it as a rejection of "'automatic' qualified immunity" for county officials like the Individual Defendants. ECF No. 16 at PageID.205–06. While it is true that *Husted* will not protect county officials enforcing a law "'so grossly and flagrantly unconstitutional' that any reasonable officer would decline to enforce [it]," *Husted*, 810 F.3d at 442, the Michigan Court of Appeals decision in *Rafaeli* is evidence alone that the GPTA was not so flagrantly unconstitutional as to deny qualified immunity. Based on the foregoing, *Husted* controls, and the Individual Defendants are entitled to qualified immunity.

The Individual Defendants further argue that the official capacity claims are redundant of the claims against the County Defendants. "[O]fficial-capacity suits generally represent only

another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978); *see also Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, *supra*, local government units can be sued directly for damages and injunctive or declaratory relief."). As such, official capacity claims against county officials are routinely dismissed as duplicative of claims against the county. *See, e.g.*, *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996).

Plaintiffs concede that the official capacity claims "might" be duplicative but maintain that "when the County Treasurers act, they seemingly are solely acting on behalf of their own county office (created by the Michigan Constitution) rather than on behalf of their respective counties." ECF No. 16 at PageID.190 n.6. (citing *Genesee Cnty. Bd. of Comm'rs v. Cherry*, No. 13-100456 (Mich. Cir. Ct. 2014)). Plaintiffs offer to stipulate to the dismissal of the official capacity claims if "Defendants collectively concede their acts, in their official capacities, are solely attributable to only Monroe and Cheboygan Counties."[2] *Id.*

Plaintiffs' reliance on *Cherry* is misplaced. There, the Lapeer County Circuit Court considered several "questions of statutory interpretation" under the GPTA relating to the management of county funds and the authority of the treasurer to act on behalf of the county. *Cherry*, slip op. at 7. Contrary to Plaintiffs' suggestion, the unpublished opinion of a state trial court hardly constitutes "leading case law," ECF No. 16 at PageID.190 n.6, and nothing in *Cherry* supports the notion that county treasurers acting as FGU do so on behalf of some entity other than

---

[2] Defendants do not seem to have accepted Plaintiffs' offer.

- 8 -

the county. Accordingly, Plaintiffs' official capacity claims against the Individual Defendants are duplicative of their claims against the County Defendants and will therefore be dismissed.

### C.

Defendants next argue that the prior foreclosure actions against Plaintiffs are res judicata and thus bar this case. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). "The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Under Michigan law, "the doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* Michigan thus "take[s] a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

The parties agree that foreclosure proceedings were initiated against Plaintiffs resulting in judgments against them. The question, therefore, is whether Plaintiffs could have challenged Defendants' post-foreclosure practice of retaining surplus proceeds during the foreclosure proceedings. Defendants insist that they could have, noting that "Michigan courts indisputably hear and resolve claims and defenses brought by reference to the federal Constitution, the Michigan Constitution and common law." ECF No. 11 at PageID.131. Notwithstanding the general jurisdiction of Michigan courts, the Michigan Supreme Court has declined to apply res judicata to similar post-foreclosure litigation.

In *Dean v. Michigan Dep't of Nat. Res.*, 247 N.W.2d 876 (Mich. 1976), a taxpayer sued a state agency for unjust enrichment after her home was sold to a private buyer in a tax foreclosure sale. *Dean*, 247 N.W.2d at 877–79. The trial court dismissed the action as "nothing more than a collateral attack on the [foreclosure] judgment of the Genesee Circuit Court." *Id.* at 880. The Michigan Supreme Court disagreed, stating,

> The suit is not barred by the prior judgment of the Genesee County Circuit Court because the subject matter of that judgment, i.e. the validity of the taxes of the state and the delinquency of plaintiff in the payment of those taxes, is completely independent of the subject matter of plaintiff's instant suit for restitution due to the unjust enrichment of the state.
>
> The plaintiff does not here, nor, apparently has she at any time disputed that she was delinquent in the payment of her property taxes in 1964. She is not, contrary to the opinion of the trial court, collaterally attacking the judgment of the Genesee County Circuit Court that the computation of the taxes due was valid, that the plaintiff was delinquent in the payment of those taxes, and that the title of the state to the property in question would become absolute upon the expiration of the redemption period.

*Id.* Like the unjust enrichment claim in *Dean*, Plaintiffs' constitutional claims are independent of the underlying tax delinquency and therefore not barred by the prior foreclosure proceedings.

Defendants' contrary reliance on *Prawdzik v. Heidema Bros.*, 89 N.W.2d 523, 526 (Mich. 1958), is misplaced. There, the defendants in an ejectment action entered into a consent judgment with the plaintiffs resolving the dispute. *Prawdzik*, 89 N.W.2d at 524–26. Shortly thereafter, the defendants brought their own action "repeat[ing] the[ir] former claims" about the effect of certain deeds and seeking to invalidate the prior judgment as fraudulent. *Id.* at 526. The complaint was dismissed. *Id.* at 527. On appeal, they argued that because a "court must consider as true all well-pleaded facts[,] . . . their allegations of fraud must be accepted and [] they are entitled to 'their day in court' thereon." *Id.* at 527. The Michigan Supreme Court explained,

> [The former defendants now plaintiffs] have already had their day in court. A disappointed or remorseful litigant cannot, by simply alleging new facts which

> were, or could have been, known to him at the time of prior litigation, have another day in court, and thereafter (upon new allegations, 'admitted' by the motion to dismiss made by his harassed adversary) still another.

*Id.* at 528. Accordingly, *Prawdzik* simply restates the general rule of res judicata—that a disappointed party cannot relitigate a previously decided case, even if the facts of her complaint are accepted as true on a motion to dismiss. *Prawdzik* has no application where, as here, plaintiffs litigate an independent cause of action in a subsequent case. Based on the foregoing, Plaintiffs' claims are not barred by the prior foreclosure proceedings.

### D.

Having decided the threshold issues, the Court will now consider arguments directed at each count of the Amended Complaint individually. For reasons set forth below, Counts II, IV, and V will be dismissed.

### 1.

Count I alleges a taking without just compensation in violation of the Fifth and Fourteenth Amendments. ECF No. 8 at PageID.65–68. Plaintiffs bring Count I pursuant to 42 U.S.C. § 1983, which creates a civil cause of action for the deprivation of federal rights by state officials. "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978)) (emphasis original). Accordingly, to hold the County Defendants liable, Plaintiffs must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [his] particular injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010) (quoting *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005)).

Relying on *Johnson v. Turner*, 125 F.3d 324 (6th Cir. 1997), the County Defendants allege that they cannot be held liable under *Monell* because the GPTA is a policy of Michigan, not the County Defendants. ECF No. 11 at PageID.140–41. In *Johnson*, several plaintiffs sought to hold a Tennessee county liable under § 1983 based on a memorandum drafted by a juvenile court judge. The plaintiffs alleged that the judge was a county official with "final policy-making authority," and that his memorandum, which directed county officials to arrest respondents in child support proceedings, was the "policy" that caused the plaintiffs' injury. *Johnson*, 125 F.3d at 335. The Sixth Circuit rejected this argument, holding that the memorandum was not a policy of the county "but rather a general restatement of state law as perceived by the juvenile court judge." *Id.*

*Johnson* is clearly inapplicable. Plaintiffs are not seeking to hold the County Defendants liable for an interpretive legal memo but for their "affirmative, voluntary, and discretionary decision" to act as FGU. ECF No. 8 at PageID.67. Plaintiffs' theory is consistent with the GPTA, which vested the County Defendants with the discretion to act as FGU. M.C.L. § 211.78(8)(a); *Rafaeli*, 2020 WL 4037642, at *7 ("Counties may elect to serve as the 'foreclosing governmental unit'; otherwise, the state will do so."). To the extent that they selected and enforced an unconstitutional policy,[3] the County Defendants can be held liable under § 1983. *C.f. Johnson*, 125 F.3d at 336 ("The Shelby County government could not have altered the state statutes, nor could it have required Judge Turner to interpret those statutes differently or otherwise interfered with the means used by the juvenile court and its employees to carry out state law."). Accordingly, Plaintiffs have adequately alleged a policy or practice for purposes of *Monell*.[4]

---

[3] Defendants note that "[e]ven if the county chooses not to make itself or its treasurer the [FGU], the county treasurer must still take the statutory steps to facilitate the State's sale of the property and the ensuing denial of any refund." ECF No. 11 at PageID.140 (emphasis omitted). The Amended Complaint, however, alleges that Defendants exercised their discretion to act as FGU. Accordingly, this Court need not consider whether Plaintiffs would have a claim if Defendants had *not* exercised their discretion.

[4] The same *Monell* analysis applies to Count V.

Turning to the substance of Count I, "[t]he Takings Clause of the Fifth Amendment prohibits taking 'private property . . . for public use, without just compensation.'" *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 609 (6th Cir. 2016) (quoting U.S. Const. amend. V). The Sixth Circuit recognizes a two-part test for takings claims. "First, the court must examine whether the claimant has established a cognizable property interest for the purposes of the Just Compensation Clause." *Id.* (internal quotation marks omitted). "Second, where a cognizable property interest is implicated, the court must consider whether a taking occurred." *Id.* (internal quotation marks omitted). "[T]he existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Washington Legal Found.*, 524 U.S. 156, 164 (1998) (internal quotation marks omitted).

Defendants deny that Plaintiffs had a cognizable property interest in the foreclosed property at the time it was sold because, under the GPTA, "title to foreclosed property vests in the county treasurer when the redemption period expires – i.e., 21 days after the judgment of foreclosure." ECF No. 11 at PageID.142 (citing M.C.L. § 211.78k(6)) (emphasis omitted). Therefore, "[b]y the time of the sale, Plaintiffs [] no longer had any 'property interest' in the foreclosed premises under state law." *Id.*

Defendants' argument was rejected in *Rafaeli*, where the Michigan Supreme Court held that Michigan common law "recognizes a former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of property." *Rafaeli*, 2020 WL 4037642, at *19. The Court further held that this right—a vested interest in personal property—is protected by Michigan's Taking Clause and not extinguished by foreclosure. *Id.* at *20–21. As the Court explained,

> Plaintiffs had a cognizable, vested property right to collect those surplus proceeds. This vested right did not simply 'vanish[ ] into thin air.' In the same way that the foreclosure process does not eliminate the former property owner's interest in the personal property that sits on the foreclosed land, the vesting of fee simple title to the real property does not extinguish the property owner's right to collect the surplus proceeds of the sale. This is a separate property right that survives the foreclosure process.

*Id.* at *21 (quoting *Armstrong v. United States*, 364 U.S. 40, 48 (1960)). The Court thus concluded that the FGU is "required to return the surplus proceeds" and that its "failure to do so constitutes a governmental taking under Michigan's Taking Clause." *Id.*

*Rafaeli* is persuasive, and there is little reason to believe that the Fifth Amendment would demand a different result. Defendants' reliance on prior Fifth Amendment case law is ultimately misplaced. In *Nelson v. City of New York*, 352 U.S. 103 (1956), for example, the Supreme Court rejected takings and due process challenges to New York's retention of surplus proceeds where the former property owners took no "timely action to redeem or to recover[] any surplus." *Id.* at 110. The Court stated that "nothing in the Federal Constitution prevents [a city from retaining surplus proceeds] where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings." *Id. Nelson* and similar cases,[5] however, are distinguishable insofar as they concerned the disposition of statutory rather than common law interests. As *Rafaeli* explains,

> Read together, *Lawton* and *Nelson* establish that the Takings Clause under the United States Constitution may afford former property owners a remedy when a tax-sale statute provides the divested property owner an interest in the surplus proceeds and the government does not honor that statutory interest. What *Seaman*, *Lawton*, and *Nelson* do not tell us, however, is what occurs when the statutes governing foreclosure make no mention of, or expressly preclude, a divested property owner's right to the surplus proceeds, but the divested property owner establishes a property right to the surplus proceeds through some other legal source, such as the common law. In that instance, the failure to provide the divested

---

[5] Several courts have rejected constitutional challenges to the retention of surplus proceeds, relying in part on *Nelson. See*, *e.g.*, *Miner v. Clinton Cty., N.Y.*, 541 F.3d 464, 475 (2d Cir. 2008); *Ritter v. Ross*, 558 N.W.2d 909, 912–16 (Wis. Ct. App. 1996).

- 14 -

       property owner an avenue for recovering the surplus proceeds would produce an identical result to *Lawton*: "Property to which an individual is legally entitled has been taken without recourse."

*Rafaeli*, 2020 WL 4037642, at *15 (quoting *Coleman through Bunn v. D.C.*, 70 F. Supp. 3d 58, 80 (D.D.C. 2014)). Therefore, notwithstanding *Nelson*, Count I plausibly alleges a taking without just compensation in violation of the Fifth Amendment.[6] To hold otherwise would mean that the Takings Clause offers no remedy to a person whom the government has stripped of a vested interest in personal property. Absent binding authority to the contrary, this Court declines to give the Takings Clause such a hollow reading. Accordingly, Count I may proceed against the County Defendants.

**2.**

Count II also alleges a taking without just compensation but purports to arise "directly" under the Fifth and Fourteenth Amendments rather than under 42 U.S.C. § 1983. ECF No. 8 at PageID.68–69. While the Sixth Circuit recognized the existence of a direct cause of action under the Fourteenth Amendment in *Gordon v. City of Warren*, 579 F.2d 386 (6th Cir. 1978), *Gordon* was soon eclipsed by the Supreme Court's decision in *Monell*. *See Thomas v. Shipka*, 818 F.2d 496, 501–04 (6th Cir.) (discussing case law regarding direct cause of action post-*Monell*), *vacated on other grounds*, 488 U.S. 1036 (1989). Today, the Sixth Circuit recognizes § 1983 as the

---

[6] This Court is mindful that Plaintiffs often conceptualize the property interest at issue as lost equity, rather than the right to collect surplus proceeds. The merits of the former theory need not be reached at this juncture, as the practical difference between the theories seems limited to damages. *See Rafaeli*, 2020 WL 4037642, at *24 ("We reject the premise that just compensation requires that plaintiffs be awarded the fair market value of their properties . . . [T]he property improperly taken was the surplus proceeds, not plaintiffs' real properties."). The question here is simply whether the Amended Complaint "contain[s] either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis original).

"exclusive remedy for constitutional violations." *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014). Accordingly, Count II will be dismissed.

### 3.

Count III is an inverse condemnation claim based on Defendants' retention of the equity in the foreclosed properties. ECF No. 8 at PageID.70–71. "A claim of inverse condemnation is 'a cause of action against a governmental defendant to recover the value of property which has been taken . . . even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'" *Mays v. Governor of Michigan*, No. 157335, 2020 WL 4360845, at *7 (Mich. July 29, 2020) (quoting *Merkur Steel Supply Inc. v. City of Detroit*, 680 N.W.2d 485, 495 (Mich. Ct. App. 2004)). "[A] plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages." *Id.* (quoting *Hinojosa v. Dep't of Nat. Res.*, 688 N.W.2d 550, 557 (Mich. Ct. App. 2004)).

Plaintiffs have clearly stated an inverse condemnation claim. As discussed in Section III.D.1., *supra*, Plaintiffs plausibly allege the taking of a cognizable property interest without just compensation in violation of the Fifth Amendment and Michigan's Taking Clause. Accordingly, Defendants' argument that Plaintiffs had no cognizable property interest and that the GPTA supersedes the need for condemnation procedures must be rejected. *See* ECF No. 11 at PageID.146–47. Count III may proceed against the County Defendants.

### 4.

Count IV alleges an essentially identical inverse condemnation claim but purports to arise under article X, section 2 of the Michigan Constitution. ECF No. 8 at PageID.71–72. Defendants correctly note that Count III and Count IV do not state distinct causes of action. "Michigan recognizes the theory of inverse condemnation as a means of enforcing the constitutional ban on

uncompensated takings of property." *Biff's Grills, Inc. v. Michigan State Highway Comm'n*, 254 N.W.2d 824, 826 (Mich. Ct. App. 1977) (citing Mich. Const. art. X, § 2). Accordingly, Count IV is duplicative of Count III and will therefore be dismissed.

**5.**

Count V alleges that the "forfeiture" of Plaintiff's equity in the foreclosed property constitutes an excessive fine in violation of the Eighth Amendment. ECF No. 8 at PageID.73–75. "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (quoting *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)) (emphasis original). "The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law." *Id.* at 610 (quoting *United States v. Halper*, 490 U.S. 435, 448 (1989), *abrogated by Hudson v. United States*, 522 U.S. 93 (1997)). Thus, when analyzing government action under the Excessive Fines Clause, the issue is not whether it is "civil or criminal, but rather whether it is punishment." *Id.* "A punitive fine violates the Eighth Amendment's 'Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.'" *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir. 2006) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).

Plaintiffs argues that, like civil forfeiture under 21 U.S.C. §§ 881(a)(4) and (a)(7), the forfeiture of equity in foreclosed property is punitive in nature and therefore governed by the Excessive Fines Clause. *See Austin*, 509 U.S. at 622 (holding that civil forfeiture constitutes "payment to a sovereign as punishment for some offense" and is therefore subject to the Excessive Fines Clause). Plaintiffs' theory must be rejected. "[T]he purpose of civil-asset forfeiture is different than the purpose of the GPTA provisions at issue here." *Rafaeli*, 2020 WL 4037642, at

*10. While civil forfeiture "serves, at least in part, to punish the owner . . . [,] the GPTA is not punitive in nature. Its aim is to encourage the timely payment of property taxes and to return tax-delinquent properties to their tax-generating status, not necessarily to punish property owners for failing to pay their property taxes." *Id.* The Michigan Supreme Court's interpretation of the GPTA is controlling.[7] *See Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) ("When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."). Accordingly, Plaintiffs cannot plausibly allege that the GPTA is punitive. Count V will be dismissed.

## IV.

On September 30, 2020, Plaintiffs moved for leave to file supplemental authority. ECF No. 32. Plaintiffs asked that this Court take notice of *Rafaeli*, *Freed*, and *Pung v. Kopke*, No. 18-1334 (W.D. Mich. Sept. 29, 2020). This Court took notice of each decision to that extent that it was binding or persuasive. Accordingly, Plaintiffs' Motion for Leave to File Supplemental Authority will be denied as moot.

## V.

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 11, is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendants Buffy Jo Weldon, Linda Cronan, and Kay Sisung are **DISMISSED**.

It is further **ORDERED** that Counts II, IV, and V are **DISMISSED**. Counts I and III may proceed against the County Defendants.

---

[7] *Rafaeli*'s distinction between the GPTA and civil forfeiture was necessary to refute the appellate court's reliance on *Bennis v. Michigan*, 516 U.S. 442 (1996), for its holding that no taking occurred. *See Rafaeli*, 2020 WL 4037642, at *10.

It is further **ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Authority, ECF No. 32, is **DENIED AS MOOT**.

Dated: January 15, 2021                                                                      s/Thomas L. Ludington
                                                                                                                                THOMAS L. LUDINGTON
                                                                                                                               United States District Judge