## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

ARKONA, LLC and DIANNE KASBOB, on
behalf of themselves and all those similarly
situated,

Case No.: 1:19-cv-12372
Hon. Thomas L. Ludington

      Plaintiffs,

      v.

COUNTY OF CHEBOYGAN and COUNTY
OF MONROE,

      Defendants.

_____/

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

For the reasons set forth in the following brief, Plaintiffs respectfully request

that the Court: (1) grant preliminary approval of the Settlement Agreement,

concluding that it will likely be able to certify the Class and Sub-Classes under Fed.

R. Civ. P. 23(b)(3) in connection with the settlement process; (2) decertify the current

plaintiff class consistent with the Settlement Agreement, subject to the provision that

the current certified class will be reinstated *nunc pro tunc* to the day before the

preliminary approval order is issued if the Settlement is terminated for any reason; (3)

appoint Matthew E. Gronda and Philip L. Ellison interim counsel for the proposed

Class and Sub-Classes under Fed. R. Civ. P. 23(g)(3); (4) approve the Notice Plan for

the Settlement as well as the Notice of Class Action and Proposed Settlement and

direct distribution of that Notice; (5) approve the Claim Form; and (6) schedule a final Fairness Hearing for the Court to hear any objections to the Settlement and determine whether the Settlement warrants final approval. A proposed order granting this motion is attached as **Exhibit 1**.

The undersigned counsel certifies that he communicated with opposing counsel regarding the nature of the relief sought by this motion and sought concurrence in the same. Defendants do not oppose this motion, and the relief requested herein with the proviso that if anything in this motion or request for relief is inconsistent with the Settlement Agreement, the Settlement Agreement controls.

August 6, 2025

/s/ Matthew E. Gronda
Matthew E. Gronda (P73693)
**GRONDA PLC**
4800 Fashion Sq. Blvd., Ste. 200
Saginaw, MI 48604
989-233-1639
matt@matthewgronda.com

Philip L. Ellison (P74117)
**OUTSIDE LEGAL COUNSEL, PLC**
PO Box 107
Hemlock, MI 48626
989- 642-0055
pellison@olcplc.com

Class Counsel/Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

ARKONA, LLC and DIANNE KASBOB, on behalf of themselves and all those similarly situated,

Case No.: 1:19-cv-12372
Hon. Thomas L. Ludington

Plaintiffs,

v.

COUNTY OF CHEBOYGAN and COUNTY OF MONROE,

Defendants.

_____/

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## STATEMENT OF QUESTION(S) PRESENTED

1. Does it appear that the proposed Class and Sub-Classes will meet Fed. R. Civ. P. 23's requirements for class certification for settlement purposes?

   **Plaintiffs' Answer: Yes.**

2. Should the Court decertify the currently certified class to enact the Settlement?

   **Plaintiffs' Answer: Yes.**

3. Should Matthew E. Gronda and Philip L. Ellison be appointed Interim Counsel for the proposed Class and Sub-Classes under Fed. R. Civ. P. 23(g)(3)?

   **Plaintiffs' Answer: Yes.**

4. Does the proposed Notice Plan satisfy the requirements of Fed. R. Civ. P. 23 and Due Process?

   **Plaintiffs' Answer: Yes.**

## MOST CONTROLLING AUTHORITIES

- Fed. R. Civ. P. 23

- *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

- *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1884 (2013)

- *Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015)

- *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

- *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

- *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

## I.    INTRODUCTION

The Settlement negotiated by Plaintiffs and Class Counsel allows those who experienced a tax foreclosure sale of their property to recover the Surplus Proceeds generated by the auction sale of property. Under the Settlement Agreement, attached as **Exhibit 2**, Defendants have agreed that Class Members who submit an Eligible Claim[1] will generally receive 125% of their Surplus Proceeds. All Administration Costs will be paid by Defendants, separate from the 125% Surplus Proceeds payment.[2] Even after payment of any Court-approved attorneys' fees, most Class Members would receive full recovery.[3] The Agreement, upon final approval would thus provide meaningful relief to Class Members.

The currently certified class, referred to in the Agreement as the Previously Certified Class, is defined as:

> All property owners formerly owning property within the Counties of Monroe and Cheboygan who, since January 1, 2013, has said property seized by Defendants via the General Property Tax Act, MCL 211.78 et

---

[1] Capitalized terms have the same meaning as in the Settlement Agreement. Unless otherwise specified, "¶" refers to a paragraph in the Agreement.

[2] As detailed in the Settlement Agreement, there are a handful of recovery limitations. In particular, each county's liability is capped. If the Eligible Claims against given county exceed 90 percent of the aggregate Surplus Proceeds that the County retained from Class Members, then the payment on such claims are reduced *pro rata*. ¶ 9.2.3. Also, Class Members are generally precluded from making claims if another interest holder in their property uses the alternate statutory claims process instead of this settlement; however, if sufficient properties in a given county are adjudicated under the statutory process, then limited claims will be available under the Settlement with respect to such properties. ¶¶ 1.21, 9.2.2.

[3] The Settlement Agreement provides that Class Counsel may seek a fee request of up to 20% of the Surplus Proceeds award of 125%. If this maximum fee request is approved by the Court, Class Members would receive 100% of their Surplus Proceeds, even after deduction for attorney's fees (125% x (1-0.20) = 100%).

seq, which was worth more and/or was sold at tax auction for more than the total tax delinquency and was not refunded the excess/surplus sale proceeds but excluding any property owner who has field [sic] their own post-forfeiture civil lawsuit to obtain such relief."

ECF No. 67. The Settlement truncates the class period to those former property owners who suffered loss between (and including) January 1, 2013, and December 31, 2020, responsive to *Howard v. Macomb Co*, 133 F.4th 566, 570 (6th Cir. 2025). The Settlement contemplates that the Court will decertify the Previously Certified Class and dismiss those members of the Previously Certified Class not described with the Class or Sub-Classes from this litigation without prejudice. If the Settlement is terminated for any reason, the Agreement stipulates that the Previously Certified Class will be reinstated *nunc pro tunc* to the day before the preliminary approval order is issued.

The Agreement is the product of extensive litigation and rigorous arm's length negotiations between the Parties, including an all-day mediation session overseen by Lee T. Silver on November 9, 2024. At the conclusion of the all-day session, the Parties agreed to a Term Sheet, and, following months of negotiations and exchanging drafts and edits and an additional mediation session, the Parties finalized the Agreement. Upon final approval, the relief secured by the Agreement provides fair, reasonable, and adequate relief to the Class, and its terms and notice procedures readily satisfy due process and the procedural requisites of Fed. R. Civ. P. 23.

Accordingly, the prerequisites for granting preliminary approval here are met,

and Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement, concluding that it will likely be able to certify the Class and Sub-Classes under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (2) decertify the current plaintiff class consistent with the Settlement Agreement, subject to the provision that the current class will be reinstated *nunc pro tunc* to the day before the preliminary approval order is issued if the Settlement is terminated for any reason; (3) appoint Matthew E. Gronda and Philip L. Ellison interim counsel for the proposed Class and Sub-Classes under Fed. R. Civ. P. 23(g)(3); (4) approve the Notice Plan for the Settlement, which will be separately filed with the Court prior to hearing on this motion, as well as the Notice of Class Action and Proposed Settlement and direct distribution of that Notice, attached as **Exhibit 3**; (5) approve the Claim Form, attached as **Exhibit 4**; and (6) schedule a final Fairness Hearing for the Court to hear any objections to the Settlement and determine whether the Settlement warrants final approval.

## II.  BACKGROUND

There is no dispute that Defendants foreclosed on the entirety of Class Members' properties in order to satisfy property tax debts smaller than the proceeds generated by the sale of the properties, and that Defendants did not return the difference. The Michigan Supreme Court found that this was a state-law taking.

*Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 466 (Mich. 2020).[4] The United States Supreme Court later found that it was a federal taking as well. *Tyler v. Hennepin Cnty., Minn.*, 598 U.S. 631, 647 (2023) ("The taxpayer must render unto Caesar what is Caesar's, but no more"). Plaintiffs allege that Defendants did all of this through a common practice that imposed the same injury on every class member. Throughout the litigation here and in closely related cases, Defendants have filed numerous dispositive motions and appeals.

This Court has twice examined the elements required for certification and certified this case as a class action. ECF Nos. 28 and 67. Plaintiffs contend that the Court's earlier conclusions remain valid. In connection with certification, the Court appointed Matthew E. Gronda and Philip L. Ellison as counsel. *Id.* From Plaintiffs' perspective, as before, this is a quintessential class action: class members suffered identical injuries from Defendants' common course of conduct. Multiple courts have certified analogous cases, either by stipulation or contested motion. *See, e.g.*, *Wayside v. Van Buren Cnty.*, No. 1:14-cv-01274 (W.D. Mich. Jun. 12, 2024) (ECF No. 555); *Bowles v. Sabree*, No. 2:20-cv-12838 (E.D. Mich. Jan. 14, 2022) (ECF No. 47); *Zettel v. Cnty. of Leelanau et al.*, No. 18-0591-26-CZ (Charlevoix Cnty. Cir. Ct. Aug. 31, 2020). And while Defendants reserve the right to contest class certification if the

---

[4] In *Schafer v. Kent Cnty.*, --- N.W.2d ---, 2024 WL 3573500 (Mich. July 29, 2024), the court confirmed that *Rafaeli* applied retroactively. *Id.* at *14-17.

Settlement is not approved or otherwise fails, they do not contest certification for purposes of concluding the settlement.

## III. KEY TERMS OF THE SETTLEMENT

**Class Definitions.** The "Class" is defined as follows:[5]

> All Persons, and the estate of such persons if they are bankrupt or deceased, that owned a Property in fee simple in any County which Property, that during the Class Period (i.e. January 1, 2013 through December 31, 2020), was foreclosed through a real property tax foreclosure and sold at tax auction for more than the Minimum Sale Price, and to whom the County did not refund the Surplus Proceeds.

¶ 3.2.2. Sub-Classes will also be created for both county defendants with the following definition (respective County's name to be substituted for "COUNTY NAME"):

> All Persons, and the estate of such persons if they are bankrupt or deceased, that owned a Property in fee simple in COUNTY NAME which Property, during the Class Period (i.e. January 1, 2013 through December 31, 2020), was foreclosed through a real property tax foreclosure and sold at tax auction for more than the Minimum Sale Price, and to whom COUNTY NAME  did not refund the Surplus Proceeds.

¶ 3.2.3. Likewise, the Parties agree to Sub-Class Representatives. ¶ 3.2.5

**Monetary Relief.** Defendants shall pay Eligible Claimants 125% of the Surplus Proceeds arising from the sale of the Eligible Property, with an exception discussed below. ¶ 9.2.1. These payments will be reduced *pro rata* with respect to any given

---

[5] As described above, the Agreement encompasses a more limited class than that previously sought in Plaintiffs' earlier-certified class. See ECF No. 67. The settlement does not resolve the claims persons who are excluded from the Agreement's class.

county as to which the sum of its share of Administrative Costs under the Settlement and the Eligible Claims exceed 90 percent of the Surplus Proceeds that the county retained during the Class Period. ¶¶ 9.2.3, 1.22.  They are also precluded with respect to properties as to which another person with an interest in the property pursues statutory relief, unless five percent of a county's properties are subject to such motions, in which case a Class Member will be entitled to 125 percent of the difference between the statutory-process recovery by the other person or persons and the surplus proceeds attributable to the Eligible Property. ¶¶ 1.21, 9.2.2. Proposed Class Counsel may request as a fee, contingent on Court approval, of no more than 20% of the Surplus Proceeds awarded to Eligible Claimants. ¶ 10.1.

**Release.** In exchange for the Surplus Proceeds payment, Defendants will receive a full release of all claims arising out of or related to Defendants' conduct as to the Eligible Properties. *See* ¶ 1.30 for full release language.

**Notice and Administration Expenses.** Defendants will pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. ¶ 6.2.

**Attorneys' Fees.** As part of the Settlement, Class Counsel has agreed to limit its request for fees to 20% of the payments made to Class Members under the Settlement. ¶ 10.1.

## IV.   THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed Class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a); *see also Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Because certification is sought under Fed. R. Civ. P. 23(b)(3), Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615-16. District courts have broad discretion to determine whether certification is appropriate. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

This Court previously examined the elements required for certification and certified this case as a class action. ECF Nos. 28 and 67. The Court's earlier conclusions remain valid. From Plaintiffs' perspective, this is a quintessential class action: class members suffered identical injuries from Defendants' common course of conduct. And while Defendants reserve the right to challenge certification in the future, they do not do so at this point. The Court should thus conclude that it will likely be able to certify the Class and Sub-classes for purposes of final settlement approval.

## A.  The Numerosity Requirement Is Satisfied

Numerosity is met when joining a large number of plaintiffs in one case would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Though there is no fixed number determining impracticability, "[i]n most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). Only a reasonable estimate is required. *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013). Plaintiffs have provided summaries of sample information from county public records. ECF Nos. 66-2 and 66-3. These summaries raise a clear inference that the county-specific subclasses are sufficiently numerous. Thus, joinder would be impractical and, thus, numerosity is satisfied.[6]

## B.  The Commonality Requirement Is Satisfied

Commonality is satisfied under  Fed. R. Civ. P. 23(a)(2) when there are questions of law or fact common to the class—the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). And even a single question will do. *Id.*, at 359 (internal punctuation omitted); see also *Whirlpool*, 722 F.3d at 582-83. "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (citing

---

[6] The Court has twice found that Plaintiffs established numerosity. ECF No. 28, PageID.718; ECF No. 67, PageID.1219.

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). Here, all Class Members' claims hinge on a common question: whether Defendants' retention of the Class's Surplus Proceeds was improper.[7] The question of whether this is a cognizable constitutional injury is common to all members of the Class. Thus, the commonality requirement is satisfied.

## C. The Typicality Requirement Is Satisfied

Typicality requires that a class representative has claims that are typical of those of other class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys.*, 75 F.3d at 1082. "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendants' systematic practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Plaintiffs allege that Defendants have improperly retained the Class's Surplus Proceeds. Plaintiffs allege this was true for the entire Class – Defendants retained and refused to return the Surplus Proceeds following tax foreclosure sales for every Class

---

[7] The Court has twice found that Plaintiffs established commonality. ECF No. 28, PageID.719-720; ECF No. 67, PageID.1219.

Member. Thus, Plaintiffs' pursuit of their own claims here will necessarily advance the interests of the Class, satisfying the typicality requirement.[8] *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 534-35; *Strano v. Kiplinger Washington Eds., Inc.*, 649 F. Supp. 3d 546, 554 (E.D. Mich. 2023).

### D. The Adequacy Requirement Is Satisfied

Class representatives under Fed. R. Civ. P. 23(a)(4)  must fairly and adequately protect the interests of the class. In order to do so, "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) (internal quotations and citation omitted). The representative must be part of the class, possess the same interest, have suffered the same injury, and seek the same type of relief as other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007).

In this case, the Complaint alleges that Defendants improperly retained the Class Members' Surplus Proceeds. Thus, Plaintiffs and Class Members have the exact same interest in recovering the damages to which they are entitled (under *Rafaeli*, *Bowles*, and *Tyler*). As such, Plaintiffs do not have any interest antagonistic to those of the proposed Class and Sub-Classes.

---

[8] The Court has twice found that Plaintiffs established typicality. ECF No. 28, PageID.720-721; ECF No. 67, PageID.1219.

Class Counsel, for their part, have extensive experience in litigating class actions and tax foreclosure Surplus Proceeds actions. They regularly engage in cases involving constitutional issues, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel elsewhere. *Id.* And, this Court has already found that Class Counsel is adequate. ECF No. 28, PageID.721-722. Class Counsel have devoted substantial resources to the prosecution of this action in this court and in the Sixth Circuit over the last six years, engaging in multiple rounds of motion practice, participating in mediation and multiple meet-and-confers, and ultimately, negotiating a settlement that provides a full recovery of Surplus Proceeds to each Class Member who makes a claim, despite the substantial litigation risks that were present. In sum, Class Counsel have vigorously prosecuted this action and will continue to work diligently on behalf of the Class throughout the settlement administration process. Because Plaintiffs and Class Counsel have demonstrated their commitment to representing the Classes and neither have interests antagonistic to the Class, the adequacy requirement is satisfied.

### E. The Proposed Class Meets the Fed. R. Civ. P. 23(b)(3) Requirements

After meeting the prerequisites of Fed. R. Civ. P. 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Fed. R. Civ. P. 23(b). *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Here, Plaintiffs seek certification under Fed. R.

11

Civ. P. 23 (b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### 1. Common Questions Predominate

Fed. R. Civ. P. 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 349-60, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Fed. R. Civ. P. 23(b)(3) predominance requirement is akin to the commonality requirement Fed. R. Civ. P. 23(a) "in that both require that common questions exist, but [Fed. R. Civ. P.23](b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016) (citation omitted). In other words, where commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers*, 501 F.3d at 619. As such, "[c]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Id.*

Here, Defendants' undisputed common course of conduct presents a question of law that is central to liability, predominating over any issues affecting individual class

members. Defendants engaged in a single course of conduct with respect to all members of the Class so their claims "will prevail or fail in unison"—thus, predominance is met. *Whirlpool*, 722 F.3d at 859 (quotations and citation omitted).

## 2. A Class Action Is a Superior Mechanism

A class action is also the superior means of adjudicating this case because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of decision as to persons similarly situated[.]" *Amchem*, 521 U.S. at 615 (internal quotations and citation omitted). A class action is preferred because it provides a mechanism through which individuals who may not otherwise have the opportunity to seek redress through litigation. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012). Claims alleging a standard course of conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity. *Id*. As held in *Coulter-Owens*, "it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 537. Here, the questions necessary to determine are common to all Class Members. As such, a "class action is the best way to vindicate the Class's rights" and "superiority is satisfied." *Strano*, 649 F. Supp. 3d at 556.

## V. CURRENT COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Under Fed. R. Civ. P. 23(g)(1)(B), "a court that certifies a class must appoint counsel … [to] fairly and adequately represent the interests of the class." The Court

considers proposed class counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed above, Class Counsel have extensive experience in prosecuting class actions in general, and tax foreclosure class actions specifically. *See* § IV.D, *supra*. Thus, the Court will find that Class Counsel will satisfy the requirements of Fed. R. Civ. P. 23(g). Indeed, it has already done so in this case. ECF No. 28, PageID.721-722.

## VI.   PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE

Settlement of class action suits is favored. 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (Newberg) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010 (internal quotation and citation omitted). A court makes an "initial evaluation" of the fairness of the proposed settlement. *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

Fed. R. Civ. P. 23(e)(2) provides factors for a court to determine if a settlement is "fair, reasonable, and adequate," examining whether: (A) class representatives and

class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, reviewing: (i) costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the processing of class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Fed. R. Civ. P. 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The Sixth Circuit has also laid out its own factors to consider. See *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.*

## A. The Fed. R. Civ. P. 23(e)(2) Factors Weigh in Favor of Preliminary Approval

This Settlement easily satisfies the Fed. R. Civ. P. 23(e)(2) factors. *First*, Plaintiffs and Class Counsel have adequately represented the class, securing a full recovery of Surplus Proceeds to each Class Member who makes a claim. See *supra*. *Second*, the Settlement was negotiated at arm's-length through mediator Lee T. Silver, following years of litigation and contentious motion practice. *See supra*. *Third*, the

relief is adequate. The Settlement Agreement generally provides for the payment of 125% of Class Members' Surplus Proceeds. ¶ 9.2.1. Class Members will be entitled to full recovery, or 100% of their Surplus Proceeds, even upon approval of attorneys' fees. See *supra*; ¶ 10.1. *Fourth*, the Settlement treats Class Members equitably. Nearly every Class Member who is an Eligible Claimant will receive 125% of their Surplus Proceeds under the Settlement. ¶¶ 1.17, 1.18, 9.2.1.[9]

**B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Preliminary Approval**

**1. There Is No Risk of Fraud or Collusion.**

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements." *Leonhardt v. AvrinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008). Here, a non-collusive settlement was reached through arm's-length negotiations via a neutral, following years of hard-fought advocacy by Plaintiffs and Defendants alike. *See Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

---

[9] As discussed above, the Settlement includes a maximum liability figure for Defendants (90% of the sum of all of the Surplus Proceeds), ¶ 1.22, but even if that unlikely figure is reached, all Class Members will be treated equitably. ¶ 9.2.3 (explaining the prorated calculation if the Maximum Liability is reached).

**2. Litigation Through Trial Would Be Complex, Costly, and Long.**

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151, at *17.

Here, the Parties have engaged in years of motion practice, both in this Court and in the Sixth Circuit, have participated in discovery, and held a private mediation. Absent a settlement, further discovery, dispositive motions, and depositions would follow. Defendants indicated that they would continue to assert numerous defenses to both class certification and the merits, including that PA 256 is the exclusive source of Surplus Proceeds. Class Counsel is also aware that Defendants would prepare a competent defense at trial and would appeal any adverse result at trial (and any order certifying a class). As evident by the duration of this litigation to date, continued litigation would be long and expensive.

Rather than continuing to pursue protracted and uncertain litigation, Plaintiffs and their counsel negotiated a Settlement that provides certain and meaningful relief. The second factor weighs in favor of finding the Settlement to be fair, reasonable, and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006).

**3. Discovery Has Been Adequate.**

The third factor is "the amount of discovery engaged in by the parties." *UAW*,

497 F.3d at 631. Prior to filing this action, Class Counsel investigated the constitutionality of Defendants' practices and began litigating Surplus Proceeds actions in court throughout Michigan. Following *Knick v. Twp. of Scott*, 588 U.S. 1801 (2019), Plaintiffs initiated this Action.

This is not a fact-intensive case. There is little, if any, dispute as to the facts regarding Defendants' conduct. The issue is its legality, and potential constraints on plaintiffs' recoveries. Nonetheless, during formal discovery and in settlement negotiations, Plaintiffs obtained wide-ranging discovery from Defendants on issues pertaining to class certification. Defendants, for their part, did the same. Class Counsel's experience in similar cases and the efforts made by counsel on both sides confirm that they are sufficiently well apprised of the facts here and the viability of their respective cases to make an intelligent analysis of the proposed Settlement. Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable and adequate.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded.

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Although Plaintiffs believe their case is strong, it is not without risk. Defendants have made clear that, absent a settlement, they will defend the case vigorously and further pursue motions for summary judgment and oppose class certification. *See* § VI.B.2, *supra*. While the Court has certified a class already,

Plaintiffs anticipate that this decision would be further challenged. Defendants would likely argue that individual questions preclude class certification, that a class action is not a superior method, and that a trial would not be manageable. And even if the Court maintained the class, Defendants would likely challenge certification through a Fed. R. Civ. P. 23(f) application and then move to decertify.

The risks of losing on the merits, of losing class certification, and of maintaining certification through trial, were all significant hurdles to obtaining classwide relief. The Settlement eliminates this risk, as well as the attendant expense and delay. Accordingly, the fourth factor also favors preliminary approval.

### 5. Class Counsel and Class Representative Support the Settlement

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *26. Here, Class Counsel supports the settlement as evidenced by this filing; and counsel have discussed the settlement with the Class Representatives and secured their support for the Agreement.

### 6. The Reaction of Absent Class Members.

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. Notice has not yet been disseminated, and the Class has accordingly not yet had an opportunity to voice any opposition to (or support for) the Settlement.

Nonetheless, Plaintiffs and Class Counsel strongly support the Settlement, which they believe is fair, reasonable, and adequate and in the best interest of the Class. Accordingly, the sixth factor weighs in favor of preliminary approval.

**7. The Settlement Serves the Public Interest.**

The seventh and final *UAW* factor is "the public interest." *UAW*, 497 F.3d at 631. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial resources. *See In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The Settlement here accomplishes both.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Id.* (internal quotations and citations omitted). "Settling this [14,503]-person class action would further the public interest by providing relief for the entire Class and conserving judicial resources." *Strano*, 649 F. Supp. 3d at 560. Indeed, judicial resources will be conserved here as settlement of this action relieves federal and circuit courts in Michigan of the obligation of handling litigation resulting from seminal decisions of the Michigan and United States Supreme Courts. The Settlement also serves the public interest by providing full relief to thousands of Michigan citizens who may be facing an acute need for such relief.

## VII.  THE NOTICE PLAN SHOULD BE APPROVED

"For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The substance of the notice to the Class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the Class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167. The proposed Notice, attached as **Exhibit 3**, meets these criteria.

Likewise, the Court should appoint RG2 as the claims administrator (the "Administrator"). The Parties and the Administrator have agreed upon a notice plan that easily satisfies the requirements of both Fed. R. Civ. P. 23 and Due Process.[10] The Administrator is experienced and well-qualified to administer the notice and claims filing process. It will send written notice of the Settlement to each Class Member via

---

[10] As indicated above, a copy of the proposed Notice Plan will be separately filed with the Court before hearing on this motion.

regular first-class U.S. mail postage pre-paid. Defendants will provide Class Members' addresses to the Claims Administrator based on the last-known addresses reflected in the Counties' records (as provided by Title Check LLC for those Counties for which Title Check has records), and the Counties and Class Counsel will work to uncover and provide any additional addresses. The Administrator will run all addresses through the National Change of Address database. It will forward any notice that is returned with a forwarding address to the forwarding address within fourteen (14) days of receiving the returned mail and shall update the Class Member address list with all forwarding addresses. It will also undertake to provide notice by publication of the Summary Notice pursuant to the terms of the Preliminary Approval Order or whatever other manner might be ordered by the Court. It will maintain a claims website with pertinent information. Finally, the Administrator will provide notice of the Settlement to the appropriate state and federal officials as required by CAFA, 28 U.S.C. § 1715. *Id.*

## VIII. THE COURT SHOULD PERMIT COUNTIES TO JOIN THE SETTLEMENT AS THEY APPROVE THE SETTLEMENT.

The Agreement is carefully structured to coordinate the Settlement's administration with the operation of the statutory claims process found at MCL 211.78t (the "78t Process," or just "78t"). The Settlement generally provides for a higher recovery than the 78t Process: 125 percent of Surplus Proceeds, versus 95

percent. But it is not intended to displace 78t for those putative class members who prefer the statutory process.

Deadlines in 78t Process are fast approaching. Class Members who have timely submitted a notice that they intend to use the process may file a motion for the return of Surplus Proceeds. Their deadline to file this motion is October 1, 2025. Class Members can effectively exclude themselves the Settlement by filing a 78t motion by this statutory deadline and not thereafter withdraw it by October 31, 2025. ¶ 3.3.2.3. And the counties agree not to pay a statutory recovery based on such a motion until that October 31 date. ¶ 19.5. But the compressed schedule makes it important to issue notice of the settlement to Class Members with enough time for them to make an informed decision.[11] Thus, in order for the proposed settlement to work, it is important to maintain the scheduled August 19 date for the hearing on this motion and render any preliminary approval order expeditiously.

Neither Defendant here formally approved the settlement before this motion's filing, and the Monroe County Board of Commissioners will consider the Settlement in a closed session on August 19 after the hearing on this motion. The counties generally must formally approve the Agreement by a vote of their respective county commissions. Scheduling and noticing a county commission meeting can pose logistical challenges, especially during summer months in which some commissions

---

[11] The proposed Notice discusses the options with respect to the 78t Process.

might not regularly schedule sessions. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Settlement as to the Defendant who has approved it as of the date of the decision on this motion, with the outstanding county able to join the settlement – and the preliminary approval order – upon notice to the Court.

The parties do not anticipate that either of the Defendant counties will fail to approve the Agreement. However, if one declines to join the settlement, the Plaintiffs and the settling Defendant will administer the Settlement and Plaintiffs will continue to litigate against the non-settling County.

## IX.    CONCLUSION

For all of these reasons, Plaintiffs request that the Court grant the motion.

August 6, 2025                                     /s/ Matthew E. Gronda
                                                  Matthew E. Gronda (P73693)
                                                  **GRONDA PLC**
                                                  4800 Fashion Sq. Blvd., Ste. 200
                                                  Saginaw, MI 48604
                                                  989-233-1639
                                                  matt@matthewgronda.com

                                                  Philip L. Ellison (P74117)
                                                  **OUTSIDE LEGAL COUNSEL, PLC**
                                                  PO Box 107
                                                  Hemlock, MI 48626
                                                  989- 642-0055
                                                  pellison@olcplc.com

                                                  Class Counsel/Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2025, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

August 6, 2025

/s/ Matthew E. Gronda
Matthew E. Gronda (P73693)
**GRONDA PLC**
4800 Fashion Sq. Blvd., Ste. 200
Saginaw, MI 48604
989-233-1639
matt@matthewgronda.com