**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

ARKONA, LLC and DIANNE
KASBOB, on behalf of themselves
and all those similarly situated,
    Plaintiffs,

v.

COUNTY OF CHEBOYGAN and
COUNTY OF MONROE,
    Defendants.

_____/

Case No.: 1:19-cv-12372
Hon. Thomas L. Ludington

**MOTION**

** CLASS ACTION **

**MOTION FOR ISSUANCE OF WRIT UNDER THE**
***ALL WRITS ACT* ENJOINING STATE COURT § 78t ORDERS**
**THAT RELEASE FEDERAL LIABILITY**

Plaintiffs move, pursuant to the *All Writs Act*, 28 U.S.C. § 1651(a), for issuance of a writ directing the state courts of Monroe and Cheboygan Counties together with Defendants County of Cheboygan and County of Monroe, to enjoin entry of any § 78t orders deriving from proceedings under M.C.L. § 211.78t that would release or discharge Defendants' federal liability to putative class members for remaining proceeds from tax foreclosure sales. Such orders threaten to undermine this Court's jurisdiction over the certified class action, prejudice absent class members, and frustrate the coordinated remedial scheme contemplated by the federal litigation and the

1

pending settlement (preliminarily approved but subject to vacatur due to Defendants' breach).

On October 24, 2025, pursuant to L.R. 7.1(a), Interim Counsel met with Defendants' counsel by video conference to discuss these matters as part of and together with the breaches matter. Concurrence was refused.

## QUESTIONS PRESENTED

Whether, under the *All Writs Act*, 28 U.S.C. § 1651(a), this Court may issue a writ enjoining Michigan state courts from entering orders under M.C.L. § 211.78t that release Defendants' federal liability to putative class members, where such orders would moot federal Takings claims, prejudice absent class members, and disrupt the Court's jurisdiction over this certified class action—particularly where Defendants' breach (ECF No. 94) has exacerbated the risk by preventing federal notice.

Plaintiffs' answer: Yes.

## MOST CONTROLLING AUTHORITY

### *28 U.S.C. § 1651(a)*

(All Writs Act: Federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions").

### *28 U.S.C. § 2283*

(Anti-Injunction Act: Federal courts may not enjoin state proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments").

**BRIEF IN SUPPORT**

This class action challenges Defendants' unconstitutional retention of stolen equity and interest from tax foreclosure auctions under Michigan's *General Property Tax Act*, M.C.L. § 211.78 et seq., in violation of the Fifth Amendment's Takings Clause. U.S. Const. amend. V; *see Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023); *Freed v. Thomas*, 81 F.4th 655 (6th Cir. 2023); *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020). The Court previously certified a broad class of affected property owners on March 15, 2024 (ECF No. 67), encompassing thousands whose equity was seized without just compensation and being withheld without the payment of interest.

In response, Michigan enacted M.C.L. § 211.78t via Public Act 256 of 2020, providing a limited inferior state-court remedy for "remaining" proceeds (only 95% of surplus) with none of the interest the Fifth Amendment requires. The Court preliminarily approved a settlement on August 22, 2025 (ECF No. 89), but Plaintiffs have now moved to vacate it for Defendants' material breaches (i.e. the non-production of notice data and delay of notice) is now pending. ECF No. 94.

Amid this, Michigan state courts are entertaining § 78t motions from an unknown putative class members, many unaware of this federal action due to Defendants' notice failures. And as a sharp practice of counties across the

1

state, FGU counsel has been adding language to § 78t orders that purport to release all liability as a backdoor way to whittle away at this class and shortchange class members. **Exhibit A**. The only obligation under § 78t is found at M.C.L. § 211.78t(9), i.e. "[t]he order also must provide *that any further claim by a claimant <u>under this act</u>* relating to the foreclosed property is barred.").

Entry of such improperly crafted § 78t orders purports to release Defendants' even greater *<u>federal</u>* liability on the claims central to this case, mooting federal relief, prejudicing absent class members, and disrupting this Court's jurisdiction. The *All Writs Act* empowers this Court to enjoin such sharp practice to protect its class certification and preserve the status quo. 28 U.S.C. § 1651(a); *see United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1974) (AWA authorizes injunctions against "persons who, though not parties to the original action, are in a position to frustrate the implementation" of federal orders).

This relief is uniquely necessary here because of Defendants' crafty breach: their failure to timely deliver complete class data (despite Court-ordered deadlines to act) prevented any federal notice from issuing, leaving class members in an informational void. ECF No. 94. Unaware of the federal action's superior remedies or the preliminary injunction (ECF No. 90) barring

non-withdrawn § 78t pursuits, these members are blindly twisting in Monroe and Cheboygan County Circuit Courts for relief that, upon finalization, would irreversibly release Defendants from their true wider liability and preclude full federal recovery. Absent a writ, Defendants would self-profit from their own wrong, using the breach-induced chaos to fragment the class and retain unconstitutional surplus in direct violation of *Tyler*. This motion seeks a targeted writ enjoining only those § 78t orders that seek to release federal liability to class members (in excess of the limited requirement of § 78t(9)), allowing non-prejudicial state processing while safeguarding federal jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   The Federal Class Action and Constitutional Violations

Plaintiffs filed this action in 2019 alleging that Defendants, under the *General Property Tax Act*, auctioned tax-delinquent properties and retained all surplus beyond the tax debt. ECF No. 1. This conduct later invalidated nationwide in *Tyler*, 598 U.S. at 639, and in Michigan specifically, *Bowles v. Sabree*, 121 F.4th 539, 545 (6th Cir. 2024) ("This Court, the Michigan Supreme Court, and the United States Supreme Court all agree that this kind of scheme is an unconstitutional taking."). The Court previously certified the class. ECF No. 67. And liability is all but assured. "This case is not about

whether [the] County violated the law. It did. This case is about how former landowners can get those extra proceeds back." *Bowles*, 121 F.4th at 545.

The certified class expands the relief for the overlapping class members and § 78t claimants: both target 2013 to 2020 foreclosures. However, the federal action provides superior relief: clear eligibility, more than 100% of surplus proceeds recovery given *Jacobs* interest (versus §78t's 95% with no interest), awards of attorney fees, and payment of administration costs borne by Defendants. ECF No. 86, PageID.1591. And what is being pursued in the informational vacuum is a continuation of what Judge Kethledge recently noted in *Wayside*: "the counties' complete lack of remorse." *Wayside Church v. Van Buren Cnty*., No. 24-1598, 2025 LX 469903, at *64 (6th Cir. Oct. 6, 2025) (Kethledge, J., concurring). "Their victims for the most part were their own residents" and yet "the counties have employed every available legal artifice to keep as much of that money as they possibly can." *Id*. And each county is doing this by "dragging its feet in hopes of running out the clock on any claimants." *Bowles*, 121 F.4th at 556.

## II.   The Settlement and Its Coordination with §78t

Both sides previously reached a settlement. The Settlement Agreement (ECF No. 86-3) was "carefully structured to coordinate" with §

78t, allowing class members to elect between remedies via timely dual notice. ECF No. 86, PageID.1612. Key provisions:

- Eligible claimants receive 125% of surplus, with county liability capped at 90% of retained funds (pro rata if exceeded). ¶ 9.2.3.

- § 78t filers must withdraw by October 31, 2025, to participate; failure precludes federal claims but allows limited § 78t recovery. ¶¶ 1.21, 9.2.2.

- Notice plan ensures informed choice, with federal notice highlighting advantages over §78t's "strict" requirements. ¶¶ 10.1-10.5.

The Court preliminarily approved this on August 22, 2025, ordering notice be provided within 14 days (ECF No. 89, PageID.1772) and enjoining other pursuits without withdrawal (ECF No. 90). However, Defendants' materially breached by a willful failure in providing usable class notice data long past the deadline (Settlement ¶ 8.1)—prevented notice issuance entirely. ECF No. 94 (detailing breach). This breach, as Plaintiffs' vacatur motion argues, constitutes a failure of consideration and frustrates the settlement's purpose, providing for rescission and reinstatement of the previously certified class.

### III. Threat from Parallel § 78t Proceedings, Exacerbated by Defendants' Breach

As of October 29, 2025, Michigan circuit courts are set to begin to adjudicate § 78t motions from effectively blind putative class members, many

pro se and uninformed of the federal action due to the notice collapse caused by Defendants' breach. *See* M.C.L. § 211.78t(5) (requiring motions by July 18, 2022, with notice to foreclosing units by October 1, 2022, and final orders discharging liability upon approval). Without federal notice – directly attributable to Defendants' nonperformance – class members lack knowledge of the greater federal recovery. And even worse, FGUs are misusing the § 78t orders to add language to try to waive federal relief (when those the state statute does not require or mandate the same).

Defendants' breach has uniquely amplified this systemic threat: by withholding data, they ensured class members would proceed blindly in state court, facing inferior  recovery, and suffering unknown loss of federal rights. Without injunction, this Court's jurisdiction – premised on complete relief for the class – will be nullified, and Defendants will be unjustly enriched by their own delay. "Local governments should serve their people, not prey upon them." *Wayside Church*, 2025 LX 469903, at *65 (Kethledge, J., concurring).

### ARGUMENTS

### I.    The *All Writs Act* Authorizes Injunctive Relief to Protect This Court's Jurisdiction Over the Class Action.

The *All Writs Act* grants federal courts broad authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). This includes injunctions against state courts and non-parties where

proceedings threaten federal jurisdiction, as here. In class actions, the AWA is routinely invoked to enjoin parallel state proceedings that risk "fragmentation" or "mootness" of federal claims. *See In re Diet Drugs*, 282 F.3d 220, 225-226 (3d Cir. 2002) (affirming AWA injunction against state actions "that would frustrate the implementation of the global settlement").

Here, § 78t orders containing the release provisions would directly frustrate this Court's jurisdiction by discharging federal Section 1983 civil rights liability and partially or fully mooting class claims for greater relief. This is not mere parallel litigation; it is a state mechanism exploiting Defendants' breach-induced notice failure to fragment the certified class. The writ is "necessary" to preserve this Court's certification (ECF No. 67) and pending vacatur proceedings—proceedings triggered precisely by the breach that now endangers the class through uninformed state filings.

## II.     The *Anti-Injunction Act*'s Relitigation Exception, Bolstered by the *All Writs Act*, Permits Enjoining State Releases of Federal Claims.

The *Anti-Injunction Act* (AIA), 28 U.S.C. § 2283, bars federal injunctions of state proceedings except to "protect or effectuate" federal judgments. This "relitigation exception" applies where state actions would relitigate issues conclusively determined federally. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988). Though no final judgment exists

here, the AWA supplements the AIA to protect ongoing federal jurisdiction in class contexts. *See In re Diet Drugs*, 282 F.3d at 227 ("The relitigation exception… is implemented through the All Writs Act."). Courts enjoin state proceedings under this framework to prevent resolutions in other forums undermining federal relief. *See, e.g., Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202-1203 (7th Cir. 1996). Federal courts have consistently recognized that class actions, by their nature, are among the clearest cases for the exercise of jurisdiction-protecting authority under § 1651(a). As the Supreme Court has explained, the All Writs Act exists precisely to prevent state proceedings from "seriously impair[ing] the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 295 (1970).

The mis-mashed § 78t orders would relitigate the core federal takings issue – Defendants' liability for surplus – effectuated by this Court's certification. Enjoining releases (while permitting § 78t claim processing for inferior relief) properly effectuates that jurisdiction without broad federal interference. Defendants' breach makes this exception particularly apt: the notice failure it caused has flooded state courts with claims that would not exist (or would be withdrawn) had federal notice issued, directly relitigating federal issues in a manner traceable to Defendants' nonperformance.

### III.     Equity and Due Process Demand Preservation of the Status Quo Amid Notice Failures Caused by Defendants' Breach.

Equity favors injunctions where irreparable harm looms: here, unknowing releases of federal remedies via § 78t orders would irreparably prejudice absent class members, violating due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (absent members entitled to notice before binding judgments). Defendants' breaches have left the class in an "informational vacuum," *see* ECF No. 94, exacerbating harm by driving class members to state court without knowledge of federal alternatives. This breach-induced prejudice—where Defendants' delay directly enables state discharges of their own liability—renders the writ not just equitable, but essential to prevent unjust enrichment from self-inflicted chaos.

The balance tips decisively: minimal burden on state courts (stay only final releases), versus total frustration of federal relief. *See N.Y. Tel. Co.*, 434 U.S. at 172 (AWA injunctions equitable where "necessary or appropriate"). Pending vacatur, the writ maintains the pre-approval class (ECF No. 67), honoring *Amchem*'s protections for vulnerable members. 521 U.S. at 628-29. Without it, Defendants' breach would achieve the very fragmentation the settlement was designed (but failed due to their fault) to prevent.

## IV.      The Traditional Injunction Factors Warrant Relief

Even under the traditional four-factor standard governing injunctive relief, this Court's intervention is not only justified but compelled. See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (injunction appropriate where movant shows likelihood of success on the merits, irreparable harm, balance of equities, and the public interest). Each factor strongly favors the Plaintiffs.

### A. Plaintiffs Are Likely to Succeed on the Merits

The Sixth Circuit has already held that the underlying conduct at issue—retaining surplus proceeds from tax foreclosures without just compensation—is unconstitutional. *Bowles*, 121 F.4th at 545 ("This case is not about whether the County violated the law. It did."). The Supreme Court in *Tyler* confirmed that a taxpayer retains a protected property interest in surplus equity. 598 U.S. 631. Plaintiffs' federal claims are therefore indisputably meritorious.

Furthermore, federal jurisdiction over these § 1983 claims is both proper and already invoked, and *Freed* confirms that federal courts may fully adjudicate such takings disputes. There is thus a substantial and near-

certain likelihood of success—and indeed success has already been recognized as to liability.[1]

### B. The Class Will Suffer Irreparable Harm Without Injunctive Relief

Irreparable harm exists where the injury "cannot be undone through monetary remedies." *Performance Unlimited v. Questar Publishers, Inc*., 52 F. 3d 1373, 1382 (6th Cir. 1995). That principle is heightened where constitutional rights are at stake. As the Supreme Court has held, "[t]he loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Book People, Inc. v. Wong*, 91 F.4th 318, 340341 (5th Cir. 2024) (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)).

Here, absent an injunction, state § 78t orders are being used by FGUs unfairly and blindly release Defendants' federal liability and extinguish Fifth Amendment rights before class members have even been provided notice. Once a state court issues an order purporting to discharge all liability,

---

[1] The sought writ/injunction does not bar § 78t proceedings generally; it prohibits only those orders that purport to release federal liability beyond what § 78t(9) authorizes.

effectively no federal remedy remains available. That loss is permanent. The purpose of this class action—to provide complete constitutional relief under federal law—will be irretrievably destroyed.

### C.   Balance of Equities Strongly Favors Injunctive Relief

This injunction merely preserves the status quo and prevents the Defendants from exploiting their own breach to evade federal accountability while at the same time allowing any person with a 78t to proceed forward unaffected. There is no cognizable harm to Defendants from being prohibited from obtaining additional releases beyond what Michigan law expressly provides in § 78t(9). By contrast, class members face total forfeiture of their federal rights. See *Winter*, 555 U.S. at 24 (courts must balance hardships). The equities weigh decisively in favor of protecting vulnerable, absent class members from unknowingly sacrificing constitutional claims.

### D.   The Public Interest Supports Issuance of the Writ

The public has a profound interest in ensuring that government actors comply with the Constitution and that federal courts retain the ability to enforce constitutional guarantees. The public has a strong interest in the vindication of constitutional rights. *G&V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("it is always in the public interest to prevent the violation of a party's constitutional rights"). This is

especially true in a certified class action designed to remedy systemic constitutional violations for thousands of property owners whose equity was unlawfully confiscated.

Moreover, the federal judiciary has an institutional interest in protecting its jurisdiction from interference. As *Atlantic Coast Line* makes clear, federal courts must be able to prevent state proceedings from "seriously impair[ing] the federal court's flexibility and authority to decide that case." That is precisely the circumstance here. Relief is not invoked to expand federal authority, but to prevent its nullification.

Under the traditional standard, each factor independently compels injunctive relief. Together, they overwhelmingly justify the issuance of a writ under 28 U.S.C. § 1651(a) and entry of a narrowly tailored injunction to prevent irrevocable harm to this Court's jurisdiction and the constitutional rights of the class.

**V.     Defendants' Conduct Constitutes Contempt of this Court's Order, Further Warranting Extraordinary Relief**

This is no longer a case of inadvertent breach or negligent nonperformance – it is a direct affront to this Court's order and a deliberate act of contempt warranting immediate federal intervention. The Court *ordered* Defendants to produce the data necessary for notice to issue, to comply with the structure of the settlement, and to act in aid of this Court's

13

jurisdiction. Instead, Defendants have openly defied those orders, not merely failing to perform, but actively exploiting their own noncompliance to seemingly pursue state-court releases designed to extinguish federal rights. Such conduct goes beyond breach: it strikes at the heart of the federal judiciary's power to administer justice and to maintain control over class proceedings within its jurisdiction.

Federal courts have inherent authority to enforce compliance with their orders and to prevent parties from undermining those directives through parallel proceedings. When parties, after obtaining the benefits of federal action, proceed to obstruct and evade federal relief through collateral mechanisms, the Court's equitable powers under the *All Writs Act* and its contempt authority converge. The extraordinary relief requested here is therefore not only "appropriate in aid of" jurisdiction, but necessary to vindicate the Court's dignity, enforce its prior orders, and prevent further contemptuous erosion of federal adjudicatory authority.

Defendants' contempt is ongoing and self-reinforcing: by refusing to produce required notice data and then capitalizing on the resulting informational vacuum to then push state courts to blindly enter orders releasing federal liability, they are attempting to place themselves above federal process. The law is clear that a party may not be allowed to profit

from contemptuous conduct or manipulate jurisdictional boundaries to defeat constitutional claims. Only immediate injunctive relief can halt this unlawful end-run around the Court's authority, preserve the integrity of this class action, and ensure that Defendants do not convert their contempt into a shield against federal liability.

## CONCLUSION

This Court is not being asked to intervene in state matters—it is being asked to preserve its own jurisdiction. The *All Writs* Act is not a sword here; it is a shield against coordinated interference with a federal class action. The FGU's hijacking of § 78t proceedings, unchecked, eviscerates this Court's jurisdiction and will leave the class remediless from federal relief. That is harm uniquely traceable to and exacerbated by Defendants' intentional breach of the prior settlement in this case. The *All Writs Act* demands a writ to enjoin liability-releasing orders, safeguarding the federal rights vindicated by this case. If this Court declines to act, state actors – after being sued in this federal forum for their unconstitutional actions – will have succeeded in extinguishing federal constitutional claims through collateral proceedings they themselves engineered. The Constitution does not permit such a result.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs request that the Court:

1.    Take up this motion on an expedited or emergency basis;

2.    Issue a writ under 28 U.S.C. § 1651(a) enjoining Michigan state courts and Defendants from causing entry of § 78t orders that release federal liability for putative class members[2];

3.    Direct service of the writ on relevant state courts and Defendants; and

4.    Grant such other relief as it deems warranted or just.

Date: October 29, 2025          RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
Philip L. Ellison (P74117)
**OUTSIDE LEGAL COUNSEL PLC**
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

/s/ Matthew E. Gronda
Matthew E. Gronda (P73693)
**GRONDA PLC**
4800 Fashion Sq Blvd, Ste 200
Saginaw, MI 48604
(989) 233-1639
matt@matthewgronda.com

*Interim Class Counsel*

---

[2] This relief does not enjoin the adjudication of § 78t claims generally, but only prohibits the entry of orders that purport to release Defendants *from federal constitutional liability beyond what § 78t(9) expressly authorizes*.

16

**CERTIFICATE OF SERVICE**

I hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of and a copy of such filing to counsel of record at their email address(es) of record.

Date: October 29, 2025      RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
Philip L. Ellison (P74117)
**OUTSIDE LEGAL COUNSEL PLC**
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

*Interim Class Counsel*

17