```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                          NORTHERN DIVISION
```

ARKONA, LLC, et al.,

                Plaintiffs,                Case No. 1:19-cv-12372

v.                                        Honorable Thomas L. Ludington
                                            United States District Judge
COUNTY OF CHEBOYGAN, et al.,

                Defendants.
_____/

**OPINION AND ORDER (1) DENYING PLAINTIFFS' MOTION TO VACATE, AND (2) DENYING PLAINTIFFS' MOTION FOR ALL WRITS ACT INJUNCTION**

After years of zealous litigation, the Parties in this putative class action agreed to settle after engaging in mediation. On August 22, 2025, this Court preliminarily approved the class settlement. It also directed the designated claims administrator to issue notice of the class settlement to putative class members.

Yet despite this settlement, the Parties remain zealous adversaries. Due to their disputes, a class notice has not been issued. Plaintiffs moved to rescind the Settlement Agreement, vacate the Preliminary Approval Order, and reinstate the previously certified class *nunc pro tunc*. They also moved for an All-Writs Act injunction that bars certain state court orders from releasing federal claims to protect the previously certified class. For the reasons explained below, Plaintiffs' Motion to Vacate, ECF No. 94, and Motion for an All-Writs Act Injunction, ECF No. 95, will be denied.

**I.**

In 2016, under Michigan's General Property Tax Act (GPTA), Defendant Cheboygan County foreclosed on and auctioned Plaintiff Arkona, LLC's property for $307,000. ECF No. 89 at PageID.1742. At that time, Plaintiff Arkona had an approximately $39,750 tax delinquency on

the property. *Id.* Defendant Cheboygan County retained the roughly $267,250 difference between the auction proceeds and tax delinquency. *Id.*

In August 2019, Plaintiff Arkona, later joined by Plaintiff Dianne Kasbob, filed this putative class action. *Id.* They sue Defendants Gratiot County and Monroe County. *Id.* On behalf of themselves and similarly situated residents of Defendant Counties, they seek to recover funds retained after tax-foreclosure sales. *Id.*

Legally, this case boils down to a basic principle: A "taxpayer must render unto Caesar what is Caesar's, but no more." *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 647 (2023). For years, the GPTA defied that principle. As mentioned, the statute created a process that authorized Michigan counties to foreclose on and auction tax-delinquent property. ECF No. 89 at PageID.1737–41. That much is unremarkable; municipal governments have always been extended the authority to enforce and collect property taxes. *Id.* at PageID.1737–38. But until late 2020, when the auction price exceeded the delinquent taxes, interest, penalties, and fees owed, the GPTA permitted counties to keep the difference—what courts have called "surplus proceeds." *Freed v. Thomas*, 81 F.4th 655, 658–59 (6th Cir. 2023). All agree that part of the law could not stand. *Bowles v. Sabree*, 121 F.4th 539, 545 (6th Cir. 2024).

As simple as the general legal principle governing this case is, the case's resolution has not been so simple. It has featured various courts—state and federal—developing law on discrete issues affecting this case. *See, e.g.*, *Wayside Church v. Van Buren Cnty.*, No. 24-1598, 2025 WL 2829601, at *1–3 (6th Cir. Oct. 6, 2025). It has featured statutory amendments that produced new legal issues. ECF No. 89 at PageID.1738–41. And it has also featured legal gamesmanship. *See Wayside Church*, 2025 WL 2829601, *12 (Kethledge, J., concurring); *Felkers v. Kent Cnty.*, No. 1:24-CV-392, 2025 WL 2887532, at *15, n.12 (W.D. Mich. Sept. 19, 2025).

After over half a decade's worth of jurisprudential and statutory development, litigation, and mediation, the Parties compromised and agreed to settle this putative class action in November 2024. *See* ECF No. 89 at PageID.1743. That compromise yielded nine more months of negotiations and a 30-page Settlement Agreement. ECF No. 86-3. On August 6, 2025, Plaintiffs filed an unopposed motion for preliminary approval of the Agreement, with a Preliminary Approval Hearing scheduled for August 19, 2025. ECF No. 86.

Discharging oversight duties under Civil Rule 23, this Court took great care to understand the finalized Settlement Agreement, ECF No. 86-3, after receiving it just two weeks before the hearing. *See* ECF No. 89 at PageID.1743–68; *see also Moeller v. Wk. Publications, Inc.*, 646 F. Supp. 3d 923, 925 (E.D. Mich. 2022) (rejecting a rubber-stamp approach at preliminary approval and adopting a thorough analytical approach to avoid a "potential walk back, which would waste public and private resources"). And after conducting the hearing and ensuring, among other things, that (1) it understood the structure and mechanics of the Settlement Agreement, (2) the Settlement Class was likely certifiable under Civil Rule 23, and (3) the settlement was generally fair, this Court preliminarily approved the Settlement Agreement. *Arkona LLC v. Cnty. of Cheboygan*, No. 1:19-CV-12372, 2025 WL 2427688 (E.D. Mich. Aug. 22, 2025).

Necessarily, the Preliminary Approval Order contemplated notice to the putative class. ECF No. 89 at PageID.1772. To that end, it approved the Parties' proposed Notice and Notice Plan while permitting the Parties "to jointly make non-material revisions to the Notice before dissemination." *Id.* It also appointed RG/2 Claims Administration, LLC, as the Claims Administrator and directed it to "begin providing notice of the Settlement Agreement and Final Approval Hearing to Potential Claimants" within "14 days of entry of this Order." *Id.*

Even before preliminary approval, Counsel sought to prepare the putative class member data for the Claims Administrator. ECF No. 98-4 at PageID.1927. Two provisions in the Settlement Agreement propelled such preparation:

> **Data from Counties.** The Counties shall provide to Interim Counsel and the Claims Administrator the following information for each Class Member: the Class Member's name; Property address; Property parcel number; Minimum Sale Price; auction sale price; Surplus Proceeds; the Class Member's last known address; and any known contact information for the Class Member (including e-mail address and telephone number). The Counties shall also provide to Interim Counsel a list of all Class Members who have submitted a notice of intent to seek the return of remaining proceeds under Michigan Compiled Laws § 211.78t and the properties with respect to which each such notice has been submitted.
>
> ***
>
> **Class Notice.** The Parties will cooperate in causing the Claims Administrator to administer a Notice Plan, which Notice Plan shall be submitted for the Court's approval as part of the Motion for Preliminary Approval of this settlement.

ECF No. 86-3 at PageID.1641, 1646. On September 3, 2025, Defense Counsel submitted sample data to the Claims Administrator for a parallel case, *Fox, et al. v. Saginaw County, et al.*, Case No. 19-cv-11887 (E.D. Mich.), seeking confirmation that the Claims Administrator approved of the data's format. ECF No. 98-5 at PageID.1929.

On September 12, 2025, Defense Counsel transmitted Defendants' data to the Claims Administrator, who confirmed receipt. ECF No. 98-2 at PageID.1922–23. Three days later, the Claims Administrator emailed Counsel to ask whether "Preliminary Approval [had] been granted" in the case. ECF No. 98-6 at PageID.1931.

The Parties nonetheless continued with Notice preparations. On September 25, 2025, Plaintiffs' Counsel sent finalized Notice forms to the Claims Administrator. ECF No. 98-7 at PageID.1934. The record reflects no response. Plaintiffs' Counsel followed up on October 1, 2025, to ask whether the Notices had been mailed. ECF No. 98-8 at PageID.1938. That date matters. October 1, 2025, was the general deadline for putative class members to file PA 256 Motions in

- 4 -

state court to recover surplus proceeds under the 2020 amendment to the GPTA.[1] MICH. COMP. LAWS § 211.78t(6). And under the Settlement Agreement, any putative class member who filed a PA 256 Motion and failed to withdraw it by October 31, 2025, was not a part of the Class in the first instance.[2] ECF No. 86-3 at PageID.1643–44.

After Plaintiffs' Counsel inquired about the Notices on October 1, 2025, the following week, both Plaintiffs' Counsel and Defense Counsel pressed the Claims Administrator about mailing Notices. On October 2, 2025, Plaintiffs' Counsel again asked the Claims Administrator about the status of mailing the Notice but received no response. ECF No. 98-8 at PageID.1938. The next day, the United States Supreme Court granted certiorari in *Pung v. Isabella Cnty.*, 222 L. Ed. 2d 1241 (Oct. 3, 2025). Notably, in *Pung*, the Supreme Court may overrule the current method of calculating damages used by the Sixth Circuit and Michigan in these tax-foreclosure cases—the surplus proceeds calculation—and adopt a fair market value (FMV) calculation. In so doing, it might deliver plaintiffs greater damages in such cases.[3]

---

[1] Defendants represent that only two putative class members filed PA 256 Motions. *See* ECF Nos. 97 at PageID.1861, n.1; 97-1.

[2] Without citing a particular statute, Plaintiffs represent that the October 31, 2025, withdrawal deadline is a statutory deadline. ECF No. 94 at PageID.1800, 1804, 1806. But no such statutory withdrawal deadline exists for PA 256 Motions. *See* MICH. COMP. LAWS § 211.78t. In fact, despite significant efforts to locate one, this Court could not find any October 31 withdrawal deadline in the GPTA broadly. *See id.* §§ 211.1 *et seq.* More troubling, after Defendants explained that October 31, 2025, is a changeable deadline set by the Settlement Agreement, *see* ECF No. 86-3 at PageID.1655—not by statute—Plaintiffs insisted otherwise, again citing only § 211.78t. ECF Nos. 98 at PageID.1916; 102 at PageID.1998. But that provision does not help them. It establishes only a March 31 notice-of-claim deadline and an October 1 filing deadline for PA 256 motions. MICH. COMP. LAWS § 211.78t(6). It says nothing about withdrawal, and nothing about October 31.

[3] The Parties effectively contemplated the possibility of the damages calculation changing in the Settlement Agreement's recitals. ECF No. 86-3 at PageID.1636 ("The Settling Parties are aware of various risks. These include . . . the proper measure of damages or other remedies.").

At any rate, a few days later, on October 7, 2025, Defense Counsel sought an update on the Notices, asking that putative class members who had filed PA 256 Motions without lienholder disputes be notified of preliminary approval "asap." ECF No. 98-8 at PageID.1937. The Claims Administrator responded that its Director was "over-scheduled th[at] afternoon" but "still working on the class data." *Id.* The Director soon added that she expected to finish that work the same day. *Id.* at PageID.1936.

When no Notice information arrived, Defense Counsel followed up on October 8, 2025, explaining: "I really need them ASAP . . . please let us know your availability for a call today to discuss the status of the notice process." *Id.* But because Plaintiffs' Counsel had not sent an updated notice form in the proper format, the Claims Administrator could not complete the notice package for this case. *See id.* After that, the Parties worked to finalize an updated the Notice and claims forms, modify deadlines, and complete the settlement website. *See* ECF Nos. 98-9, 98-10; 98-12. But they seemingly could not agree on the Notice, and Plaintiffs' Counsel informed Defense Counsel that they intended to move to vacate the Settlement. *See* ECF No. 98-14.

On October 29, 2025, Plaintiffs moved to vacate the Preliminary Approval Order, rescind the Settlement Agreement, and reinstate the previously certified class *nunc pro tunc*. ECF No. 94. They also moved for an injunction under the All Writs Act, 28 U.S.C. § 1651(a), that "bars state courts of Monroe and Cheboygan Counties together with Defendants County of Cheboygan and County of Monroe, to enjoin entry of any § 78t [(PA 256)] orders deriving from proceedings under M.C.L. § 211.78t that would release or discharge Defendants' federal liability." ECF No. 95.

## II.

The present issues turn on resolving disputes under the Settlement Agreement. A settlement agreement is governed by state contract law. *Cogent Sols. Grp., LLC v. Hyalogic, LLC*, 712 F.3d

305, 309 (6th Cir. 2013) (citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)). The Parties do not dispute that the Settlement Agreement is a binding contract. The Agreement specifies that Michigan law governs. ECF No. 86-3 at PageID.1660.

### III.

### A.

Start with Plaintiffs' Motion to Vacate. ECF No. 94. At core, Plaintiffs contend that Defendants breached the Settlement Agreement by failing to timely provide data so that the Claims Administrator could begin providing Notice within 14 days of Preliminary Approval. *See generally id.* Plaintiffs argue that this delay was material because it prevented putative class members from receiving notice of the Settlement Agreement before the October 1, 2025, deadline for filing a PA 256 Motion or in time to make an informed decision about whether to withdraw filed PA 256 Motions. *See generally* ECF Nos. 94; 102. In their view, this breach warrants rescinding the Settlement Agreement and vacating the Preliminary Approval Order. Not so.

Under Michigan law, courts analyze settlement agreements like any other contract. *Scholnick's Importers-Clothiers, Inc. v. Lent*, 343 N.W.2d 249, 253 (Mich. Ct. App. 1983). So a settlement-rescission inquiry turns on ordinary contract principles and is available only for a material breach. *See id.*; *P.A.L. Inv. Grp., Inc. v. Staff-Builders, Inc.*, 118 F. Supp. 2d 781, 787 (E.D. Mich. 2000); *Omnicom of Michigan v. Giannetti Inv. Co.*, 561 N.W.2d 138, 141 (Mich. Ct. App. 1997). By contrast, substantial performance—which is good-faith performance that satisfies the essentials needed to achieve the contract's purpose, even if it falls short of exact compliance— does not qualify as a material breach and does not justify rescission. *See Antonoff v. Basso*, 78 N.W.2d 604, 610 (Mich. 1956); *O'Conner v. Bamm*, 56 N.W.2d 250, 253 (Mich. 1953); *Jenkins v. U.S.A. Foods, Inc.*, 912 F. Supp. 969, 973 (E.D. Mich. 1996) (citing *Gibson v. Grp. Ins. Co.*,

369 N.W.2d 484, 486 (Mich. Ct. App. 1985)). Here, Plaintiffs identify no material breach justifying rescission.

For starters, Plaintiffs face an uphill battle with their data-delay theory. While courts assess material breach on a fact-specific basis, a modest delay in performance rarely qualifies as a material breach that justifies rescission. *See, e.g.*, *Jenkins*, 912 F. Supp. at 973; *In re Am. Cas. Co.*, 851 F.2d 794, 798 (6th Cir. 1988); *Jawad v. Hudson City Sav. Bank*, 636 F. App'x 319, 322 (6th Cir. 2016); *A. E. Giroux, Inc. v. Cont. Servs. Assocs., Div. of Premium Corp. of Am.*, 299 N.W.2d 20, 21 (Mich. Ct. App. 1980); *J. S. Evangelista Dev., LLC v. APCO, Inc.*, No. 357789, 2023 WL 2051174, at *4 (Mich. Ct. App. Feb. 16, 2023); Restatement (Second) of Contracts § 237 (Am. L. Inst. 1981). But delay becomes material in two circumstances.

First, a delay in performance constitutes a material breach when time is of the essence. *Cooper v. Klopfenstein*, 185 N.W.2d 604, 607 (Mich. Ct. App. 1971). Time is not of the essence by default. *MacRitchie v. Plumb*, 245 N.W.2d 582, 585 (Mich. Ct. App. 1976). It becomes so only if the contract expressly says so, or if the surrounding circumstances make clear that the parties intended strict adherence to contractual deadlines. *Friedman v. Winshall*, 73 N.W.2d 248, 254 (Mich. 1955).

Second, a delay may be material when it is so substantial that it otherwise undermines an essential element of the bargain, rendering the other party's remaining performance ineffective or impossible. *Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*, No. 18-12605, 2020 WL 5200958, at *2 (E.D. Mich. Sept. 1, 2020); *cf. McCarty v. Mercury Metalcraft Co.*, 127 N.W.2d 340, 343 (Mich. 1964).

Here, Defendants' performance in providing the data did not constitute a breach, much less a material breach. The Settlement Agreement's text sets no deadline for Defendants to transmit

data to the Claims Administrator. *See* ECF No. 86-3. So Defendants had a "reasonable time" to perform that duty. *Pierson v. Davidson*, 233 N.W. 329, 331 (Mich. 1930) ("It is a general rule of law that where no time is stipulated, a reasonable time will be presumed. Reasonable time depends upon the facts and circumstances of each case."); *Duke v. Miller*, 94 N.W.2d 819, 820 (Mich. 1959); *McCune v. Grimaldi Buick-Opel, Inc.*, 206 N.W.2d 742, 744 (Mich. Ct. App. 1973); *Busch Marine Grp., Inc. v. Calumet River Fleeting, Inc.*, 617 F. Supp. 3d 809, 817, n.3 (E.D. Mich. 2022).

Defendants performed within a reasonable time. Considering the cooperation provision governing implementation of the Notice Plan, and the Preliminary Approval Order's instruction that the Claims Administrator "begin providing notice of the Settlement Agreement and the Final Approval Hearing to Potential Claimants in the Notice Plan" within 14 days, Defendants surely did not have months to discharge that obligation. *See* ECF Nos. 86-3 at PageID.1646; 89 at PageID.1772. But the Order's requirement that the Claims Administrator *start* effectuating the Notice Plan within 14 days also did not mandate that Defendant Counties provide final data before then. That is especially true when the Claims Administrator's approved Notice Plan includes more than just notice by mail, incorporating forms of notice that require no data, such as a printed notice published in a local newspaper and social media outreach.[4] *See* ECF No. 88 at PageID.1715–16. Ultimately, then, Defendants needed to transmit the data in time for the putative class members to receive direct notice with enough time to determine whether to withdraw their PA 256 Motions.

Against that backdrop, Defendant provided data on September 12, 2025, weeks before October. That timing was reasonable—providing ample time for Notice so that putative class

---

[4] Of course, the Claims Administrator could not begin providing this indirect notice within 14 days of the Preliminary Approval Order. The Parties (ironically) did not notify the Claims Administrator about the Preliminary Approval Order until at least September 15, 2025. *See* ECF No. 98-6.

members could choose between this settlement and PA 256. Thus, the Defendants' timing in transmitting the data did not breach the Settlement Agreement.

The Agreement's structure and surrounding circumstances confirm the point. Several provisions address the PA 256 process. *See generally* ECF No. 86-3. But the only date that they emphasize is the October 31, 2025, PA 256 Motion withdrawal deadline. ECF No. 86-3 at PageID.1644, 1658. This emphasis on the PA 256 withdrawal deadline assumes that many potential members will decide whether to participate in this class settlement process after they file a PA 256 Motion. Likewise, Plaintiff's preliminary-approval motion emphasizes the withdrawal deadline and the need for notice in time for class members to make an informed choice between participating in this action by withdrawing their PA 256 Motion. ECF No. 86 at PageID.1613. On this score, Defendants' data submission in early September provided ample time to notify potential class members in time for an informed choice about which process to use.

For many of the same reasons, even assuming Defendants' timing in sending the data breached the Settlement Agreement, that delay does not constitute a material breach warranting rescission. Up front, neither the Settlement Agreement nor the Parties' conduct specifies that time was of the essence, such that *any* delay in providing data establishes a material breach. *See* ECF No. 86-3. So the inquiry shifts to the usual material breach analysis: whether the delay was so substantial that it undermines the contract's essentials.

To assess the materiality of a breach under Michigan law, courts consider multiple factors. *Franklin v. Haak*, 499 F. Supp. 3d 379, 389 (E.D. Mich. 2020). These factors include the following: (1) whether the nonbreaching party received the benefit it reasonably expected; (2) the extent to which damages can compensate for any shortfall in performance; (3) the degree of partial performance already rendered; (4) the hardship termination would impose on the breaching party;

(5) whether the breach was willful; (6) and the likelihood that the breaching party will complete the remaining performance. *Omnicom of Michigan*, 561 N.W.2d at 141. Here, the factors demonstrate that no material breach occurred.

Start with the benefit of the bargain. Defendants' data submissions did not deprive Plaintiffs of what they bargained for: an opportunity to participate in the class settlement and recover a gross 125% of their surplus proceeds, if approved. Using the data Defendants submitted on September 12, the roughly two putative class members who had filed PA 256 motions could have received direct notice of the settlement and had sufficient time to withdraw their motions and participate in the class. The remaining putative class members could have received notice as well— and still could today. Based on the materials in the record, the putative class failed to receive direct notice, not because of any deficiency in Defendants' September 12 submission, but because of downstream communication challenges involving the Claims Administrator and Plaintiffs' counsel's provision of an updated notice form. *See, e.g.*, ECF Nos. 98-7; 98-8.

Turn to another factor: whether Defendants willfully breached the data provision. Nothing in the record establishes that they did. Nothing shows that Defendants intentionally delayed data transmission to obstruct notice. To the contrary, the record reflects Defendants' consistent efforts to prepare and provide usable data to the Claims Administrator. *See, e.g.*, ECF Nos. 98-2; 98-4; 98-5. After transmitting the data, Defendants also acted promptly to facilitate notice, despite delays attributable to Plaintiffs' challenges in supplying finalized notice materials and the Claims Administrator's lack of responsiveness. Thus, this factor likewise weighs against a finding of material breach.

The remaining factors point in the same direction. Defendants have already rendered substantial performance: they transmitted the data, built and completed a claims website, and

worked toward finalizing a notice package. They also paid the Claims Administrator's invoice in reliance on the Settlement Agreement. Rescission would expose them—and Plaintiffs—to significant unjustified litigation risk. And the record indicates that Defendants remain willing and able to complete settlement administration. Taken together, these considerations confirm that no material breach occurred.

At bottom, Plaintiffs have not demonstrated that they are entitled to rescission of the Settlement Agreement under their data-delay theory. Defendants' timing in submitting the data did not breach the Settlement Agreement. And even if it did, the breach was not material.[5]

Finally, in passing, Plaintiffs assert that Defendants violated the implied covenant of good faith and fair dealing. *See* ECF No. 94 at PageID.1822. Plaintiffs contend that Defendants provided the data late to "run out the § 78t clock, allowing counties to illegally retain more surplus proceeds." *Id.* This argument lacks merit: it rests entirely on speculation.

Michigan law recognizes an implied covenant of good faith and fair dealing, which "promis[es] that neither party shall do anything that destroys or injures the other party's right to receive the fruits of the contract." *Kircher v. Boyne USA, Inc.*, No. 166459, 2025 WL 938147, at *3 (Mich. Mar. 27, 2025) (citation modified). To that end, when a contract confers discretion over performance, the law requires that party to exercise that discretion honestly and in good faith. *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975). Thus, a party alleging breach must present evidence establishing that the other party acted in bad faith

---

[5] Plaintiffs also argue that the Court should vacate the Preliminary Approval Order because the approved Notice is outdated and those who filed PA 256 Motions never received notice about the withdrawal deadline and can no longer withdraw their Motions. *See generally* ECF Nos. 94; 102. That argument is similarly unpersuasive. The Parties can update the Notice. And the Settlement Agreement can still be administered by adjusting the deadlines in the Preliminary Approval Order and rescheduling the Final Approval Hearing. As noted below, this Court will do so. The Preliminary Approval Order otherwise remains in effect.

when exercising contractual discretion. *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 305 (3d Cir. 2001).

Here, assuming that the data provision implicitly gave Defendants discretion over the timing of data submission, rendering the covenant applicable, Plaintiffs have not offered evidence of bad faith. Even if Defendants' data submissions were untimely, as explained above, the record does not show that Defendants deliberately delayed transmitting the data or otherwise acted in bad faith. So Plaintiffs' second theory does not establish a recission-warranting breach, either.

\*\*\*

In sum, Plaintiffs have not identified a material breach. At worst, they identify no breach. At best, they identify a breach that is not a material breach. Either way, they have not cleared the threshold to justify applying the "harsh" recission remedy. *Warren v. Hugo Scherer Estate*, 261 NW 319, 320 (Mich. 1935). Because Plaintiffs have not justified rescinding the Settlement Agreement and modifying deadlines in the Preliminary Approval Order remedies notice issues concerning Civil Rule 23, Plaintiffs' Motion to Vacate, ECF No. 94, will be denied.

**B.**

Turn to Plaintiffs' Motion for an All Writs Act Injunction, ECF No. 95. Plaintiffs contend that because some state court orders on PA 256 Motions release federal claims, this Court should enjoin Monroe and Cheboygan County courts from doing so. *Id.* at PageID.1826. They argue that "[s]uch orders threaten to undermine this Court's jurisdiction over the certified class action, prejudice absent class members, and frustrate the" Settlement Agreement's scheme. *Id.* at PageID.1826–27. Plaintiffs explain that this "relief is uniquely necessary here because of Defendants' crafty breach: their failure to timely deliver complete class data . . . prevented any federal notice from issuing, leaving class members in an informational void." *Id.* at PageID.1831. This argument misses the mark.

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. But the Anti-Injunction Act, 28 U.S.C. § 2283, curbs federal courts' authority to enjoin state court proceedings. *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 38 F.4th 501, 505 (6th Cir. 2022). The Anti-Injunction Act prohibits federal courts from enjoining state-court proceedings unless it is (1) "expressly authorized by Act of Congress," (2) "necessary in aid of its jurisdiction," or (3) "to protect or effectuate its judgments." 28 U.S.C. § 2283. Put differently, it "is an absolute prohibition . . . against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). In the end, the Anti-Injunction Act's "'message is one of respect for state courts,' namely that they should 'remain free from interference by federal courts.'" *Hanover Am. Ins. Co.*, 38 F.4th at 505 (quoting *Smith v. Bayer Corp*, 564 U.S. 299, 306 (2011)). Given those sharp limitations, Plaintiffs have not established their entitlement to the injunction.

First, Plaintiffs have not demonstrated that any of the Anti-Injunction Act exceptions apply. Plaintiffs argue that the "relitigation exception"—the exception that permits enjoining state courts to protect a federal court's judgments—applies because, without an injunction, the state courts will relitigate federal takings liability.[6] *See* ECF No. 95 at PageID.1836–37. But they cannot establish a core prerequisite for this exception: this Court having issued a preclusive order on the merits in this case. *See Smith*, 564 U.S. at 307.

---

[6] Plaintiffs shift gears and assert that the second exception applies, the exception that allows enjoining state courts when it is necessary in aid of the federal courts' jurisdiction. *See* ECF No. 103 at PageID.2005–06. But "a movant cannot raise new issues for the first time in a reply brief." *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012).

Second, Plaintiffs' basis for the injunction is speculative. The only support they provide for their contention is that another county, Wayne County, releases federal claims in PA 256 proceedings. *See* ECF No. 95-1. But Plaintiffs have not shown that Monroe and Cheboygan County courts are releasing federal claims in PA 256 cases. Nor have they shown that they are likely to soon. Even if an Anti-Injunction Act exception applied, without more from Plaintiffs, this Court will not "resort[] to heavy artillery," *Smith*, 564 U.S. at 307, and meddle in state court proceedings.

In short, Plaintiffs have not demonstrated that an injunction barring state court orders on PA 256 Motions from releasing federal claims is warranted. As a result, their Motion for an All Writs Act Injunction, ECF No. 95, will be denied.

**IV.**

Accordingly, it is **ORDERED** that Plaintiffs' Motion to Vacate, ECF No. 94, is **DENIED**.

Further, it is **ORDERED** that Plaintiffs' Motion for an All Writs Act Injunction, ECF No. 95, is **DENIED**.

Further, it is **ORDERED** that the Parties are **DIRECTED** to update the Notice approved in ECF No. 86-4 to accord with this Opinion and Order, finalize it, and send it to the Claims Administrator **on or before January 9, 2026**.

Further, it is **ORDERED** that the Claims Administrator is **DIRECTED** to provide notice via direct mail and advertisement **on or before January 23, 2026**.

Further, it is **ORDERED** that the Parties are **DIRECTED** to notify the Claims Administrator of this Opinion and Order within 5 business days of its issuance and submit a notice with this Court certifying when they have done so.

Further, it is **ORDERED** that the deadline to withdraw PA 256 Motions (motions filed under Mich. Comp. Laws § 211.78t as contemplated by the Settlement Agreement ¶ 1.39) to avoid

automatic exclusion from the class is **EXTENDED,** and putative class members are **PERMITTED** to withdraw previously filed PA 256 Motions until the state court enters an order on the putative class member's PA 256 Motion, **or on or before April 30, 2026, whichever is sooner**.

Further, it is **ORDERED** that the opt-out and objection deadline is **EXTENDED**, and they must be submitted **on or before April 30, 2026, or 30 days following** the filing with this Court of a Fee Petition by Plaintiffs' Counsel, **whichever is later**.

Further, it is **ORDERED** that the claims deadline is **EXTENDED**, and claims must be submitted **on or before July 16, 2026**.

Further, it is **ORDERED** that the Final Approval Hearing is **ADJOURNED** to **September 23, 2026, at 3:30 PM EDT**.

Further, it is **ORDERED** that the Preliminary Approval Order, ECF No. 89, is **AMENDED** to the extent it is inconsistent with any deadline in this Opinion and Order.

Dated: December 23, 2025          s/Thomas L. Ludington
                                  THOMAS L. LUDINGTON
                                  United States District Judge